CHIEF JUSTICE HARDIN
delivered the opinion op the court.
Although the questions involved by this appeal are not numerous, nor very difficult if clearly discernible from the record, their consideration is much embarrassed both by the defective and irregular preparation of the several consolidated cases in the court below and the confused manner in which the record has been supplied.
On the 3d day of January, 1851, Edwin Hawes and his brother ¥m. F. Hawes, in contemplation of a copartnership in the business of mining and selling coal from a tract of about seven hundred and fifty acres of land, then owned by the former, in Hancock County and adjacent to the Ohio River, entered into an executory contract, whereby, in consideration of a tract of land in, Daviess County to be conveyed to said Edwin by W. F. HawesJ he sold and undertook to convey to W. F. Hawes an undivided interest of one fourth of said tract of seven hundred and fifty acres of land, to be held,' as expressed in the contract, “ in jointure,” in view, as we presume, of their intended partnership. Afterward Edwin Hawes, who retained twelve sixteenths of the seven-hundred-and-fifty acre tract, sold one sixteenth thereof to Neal Monroe, and a copartnership was formed and continued for several years *17 between E. and W. E. Hawes and Monroe, in which C. T. Hawes was for some short time also a partner, apparently in pursuance of the original intention of E. and W. F. Hawes.
On the 1st day of November, 1859, while the coal-mining business was being conducted by Edwin and W. F. Hawes and Monroe in the firm-name of E. Hawes & Co., said Edwin and W. F. Hawes entered into a contract, stipulating in substance and effect that said Edwin then leased from W. F. Hawes his interest in the mines for the term of two years then next ensuing for the consideration of one and one quarter cents per bushel for all coal that might during the time be sold from said mines at six cents or more per bushel, and one cent per bushel for all which might be sold for a less price than six cents per bushel.
No other written agreement was executed by the parties providing for the dissolution of the partnership or the withdrawal of W. F. Hawes therefrom, nor does it appear that he entered into any contract for the absolute sale or disposition of his interest in the real and personal property which remained in the possession and use of the other members of the firm, who continued the mining business in the original firm-name of E. Hawes .& Co.; but it does appear that from the date of said lease ¥m, F. Hawes ceased to act as a partner, or in any way to participate in the business of the firm; and in September, 1861, while his said lease remained in force, he left the state of Kentucky and joined the army of the Confederate States, then at war with the government of the United States, and did not return from beyond the Confederate lines till near the close of the year 1865.
During the month of December, 1861, and the two succeeding months, suits were brought, with attachments against the property of Vm. F. Hawes, by twenty parties claiming to be his creditors, including those who are now prosecuting this appeal; and the attachments were levied on the real and *18 personal property of W. F. Hawes, including that which remained in the possession of his late copartners, but of which they were not then divested of possession, and which they continued to use as they had done since the execution of the lease to Edwin Hawes. Afterward, on the 6th day of March, 1862, a contract was entered into, purporting on its face to be executed by the firm of E. Hawes & Co., as originally composed of Edwin Hawes, Wm. F. Hawes, and Neal Monroe, and the firm of Williams & Co., a rival coal-mining company, consisting of George W. Williams and Franklin Lander, but which agreement seems to have been executed by the signatures of the two firm-names being affixed by Edwin Hawes and Williams only. That agreement stipulated and provided for the consolidation and co-operation of the two firms in the sale of coal, to be furnished by them in equal quantities, their coal-yards and boats to be thereafter jointly kept by them for the term of five years; and it also provided that the two companies so united, and thereafter to be known as Lander & Co., should lease for their joint use other coalmines besides those then being operated by them, which were owned by the heirs of Aylett Hawes, deceased; and this part of the agreement was shortly afterward carried into effect by the leasing and working of the last-named mines. The mining business, as conducted by Lander & Co., having proved successful, and considerable profits being realized by the individual members of the two consolidated companies, and the suits against Wm. F. Hawes still pending, the six parties who are now appellants, on the 1st day of September, 1863, again caused general orders of attachment to be issued in their respective actions against Wm. F. Hawes, on which the sheriff returned in effect that he had “attached the interest of Wm. F. Hawes, sr., in and to the partnership concern of Lander & Co., including the boats, tools, etc., belonging to' the partnership, agreeably to the articles of copartnership entered into *19 between Williams & Co. and E. Hawes & Co.;” . . . and that he had “ delivered to Monroe and Lander, managers, and two of the partners of said firm of Lander & Co., a true copy of the attachments.” In the progress of the cause Edwin Hawes and Monroe and George W. McAdams, who had become interested as a copartner with them, by a petition filed by them as claimants of the whole of the profits accruing to the firm of E. Hawes & Co., as part of the new firm of Lander & Co., controverted the claim of the plaintiffs to subject any part of it under their attachments as belonging to Wm. E. Hawes.
On the first hearing of the cases the attachments were sustained as to all the real and personal property levied upon under the first orders of attachment, and the causes were reserved for further adjudication as to the “profits realized from the asserted interest of William E. Hawes in the concern of Lander & Co.”
And afterward, in August, 1867, the causes were again submitted for trial, as the record states, “upon the pleadings, exhibits,” etc.; and “thereupon Edwin Hawes, by his attorney, moved the court to discharge all the attachments in these consolidated actions which were levied upon any interest in the business or profits of the partnership concern of Lander & Co.; and upon hearing the said motion, it appearing to the satisfaction of the court that defendant W. F. Hawes was not at the time of the levy of said attachments and is not a partner or member of the firm of Lander & Co., and was not and is not interested in the business or profits of the said partnership concern of Lander & Co.,” the motion was sustained, and the attachments, to the extent indicated, were discharged; and this appeal is prosecuted for a reversal of that judgment.
Placing out of view the question presented in the argument for the appellee as to the sufficiency of the sheriff’s return upon the last attachment orders, and also the further question *20 whether, in the absence of any bill of exceptions to show what evidence was heard and considered by the court on the motion to discharge the attachments, this court ought not to -presume that the judgment was based on sufficient evidence, we will proceed to consider what we conceive to be the principal inquiry involved by this appeal, and on which its determination should depend. It is twofold: first, was Wm. F. Hawes in fact a partner in the business of the firm of Lander & Co., or entitled as against them to an interest of one eighth part in the profits of their business, or to that amount as against’ Edwin Hawes individually; and second, if he was not, is or not Edwin Hawes nevertheless estopped from controverting the asserted fact that Wm. F. Hawes was a partner, or so entitled.
The lease from Wm. F. to Edwin Hawes of November 1, 1859, was manifestly incompatible with the continuance, during its existence at least, of the rights and responsibilities of Wm. F. Hawes as a member of the late firm, and upon well-settled principles either operated to dissolve the partnership absolutely, or with the assent of its members to suspend it during the continuance of the lease. But if it would have had the latter effect only, there is not only a failure of proof of an intention on the part of W. F. Hawes and his late partners that his relations with them should be continued notwithstanding the altered condition of his interest, but the evidence is such as to repel the presumption that any such intention existed. But whatever might have been his rights with respect to the original partnership at the expiration of the lease, it conclusively appears from the agreed statement of facts in this case and other evidence that he was not in fact a party to the contract by which the partnership of Lander & Co. was formed, and did not authorize the use of his name as a member of it, nor sanction it afterward.
It moreover fully appears that at the time of the formation *21 of the partnership of Lander & Co. actual war existed between the government of the United States, to which the state of Kentucky adhered, and the de facto government of the Confederate States, into which W. F. Hawes had gone and become engaged in the war against the United States. The attitude in which the partners thus became placed as antagonist enemies not only rendered unlawful such amicable communication as was necessary to ihe carrying on of partnership business, but was obviously inconsistent with it, the objects and ends of partnerships being generally the joint application of the skill, labor, and enterprise of all the partners as well as of their funds. (Story on Partnership, secs. 315-316: Parsons on Partnership, 27; Griswold v. Waddington, 15 Johnson, 52.)
These principles have been repeatedly recognized by this court, particularly in the cases of Leathers v. Commercial Ins. Co. (2 Bush, 296) and New York Life Ins. Co. v. Clopton (7 Bush, 179). It is said in the opinion in the latter case, with reference to contracts of partnership and affreightments, that “ as supervening war between the parties disables them from performing any of the incumbent duties and defeats the object of the contract, a dissolution of the contract is the natural and legal effect of the war.”
We are of the opinion therefore that if, notwithstanding the lease of Edwin Hawes and consequent cessation of W. F. Hawes’s participation in the' business of the firm, and the subsequent consolidation of the two firms of E. Hawes & Co. and Williams & Co. without the knowledge or consent of Wm. F. Hawes, he might still, under different circumstances, have acquired in the capacity of a partner an interest in the profits of the concern of Lander &' Co., the belligerent relations which existed between him and his late partners not only operated to dissolve or suspend the original partnership, but rendered it unlawful for him actually or constructively to *22 enter into the new contract of partnership with Williams and Lander. It is not material in this case, nor is it necessary that we should decide, whether, in view of the rights of the several members of the original firm of E. Hawes & Co., it was dissolved or only suspended by the war, for it does not appear that the business of that partnership was ever resumed under any contract to which W. F. Hawes was a party.
It is argued, however, for the appellants that their rights are the same in this case whether the partnership was dissolved or suspended or continued to exist, on the grounds of accountability for the use of W. F. Hawes’s interest in the real and personal property with and upon which the mining business was carried on, and we are referred to the case of Stoughton v. Lynch (1 Johnson’s Ch. Rep. 467), Story (supra, sec. 174), and other authorities in support of this position. The principle therein maintained is not applicable to this case; but is, as we conceive, restricted to cases in which the partnership funds are clandestinely withdrawn or fraudulently misappropriated by one or more partners without the consent and to the injury of the others. In such cases it is well settled, and for obvious reasons, that equity will compel a division of the profits derived from the funds thus misappropriated. By proper proceedings the firm of Lander & Co. might perhaps have been made to account for the fair value of the use of Wm. F. Hawes’s interest in the real and personal property which came into their possession under the contract of consolidation; but it does not appear to have been embraced by the levy of the appellants’ attachments, nor is there such pleading and evidence in relation to it as would have authorized any judgment subjecting it to the appellants’ claims; neither is it maintainable from the pleading or evidence in the record that any contract, express or implied, existed between Wm. F. and Edwin Hawes devolving a trust upon the latter to use the interest of W. F. Hawes in the property as if he were a member of *23 the firm of Lander & Co., and be accountable to him for a proportionate share of the profits realized by that firm. The principal ground from which it is insisted that such a conclusion should be drawn is an apparently unguarded statement in an answer filed by Edwin Hawes on the 11th day of February, 1865, and long before any attempt was made by the appellants to attach and subject the fund now in controversy, which statement is in effect that the partnership of E. Hawes & Co. was not then dissolved, but still in existence, and its business being actually prosecuted and conducted. Neither this nor any other statement or admission of Edwin Hawes imports an agreement to stand or act as the trustee of W. F. Hawes; and if such statements in the pleadings can have any effect to bind or conclude the latter, it obviously must be as an estoppel and not as evidence of a contract. But those statements, which probably were intended to relate only to the manner in which the title to the property was held, however improvidently made, do not in our opinion constitute an estoppel, especially as the mistake was subsequently corrected (Herman’s Law of Estoppel, 354); and they do not appear to have been intended to nor .did they influence the conduct of the appellants, or lead them into a line of conduct prejudicial to their interest.
Upon the whole case no available error is perceived to the prejudice of the appellants. Wherefore the judgment is affirmed.