## Niles, et al. v. Meade, et al.

(Decided October 19, 1920.)

### Appeal from Warren Circuit Court.

### Motion to Dissolve Injunction.

1. Injunction—Prevention of Trespasses—Multiplicity of Suits.—Injunction will lie to prevent trespasses repeated and threatened to be repeated from day to day of a character calculated to destroy the substance of the property, in the form in which it is held, and to result in a multiplicity of suits at law.

2. Contracts—Failure to Perform Because of Casualties.—Obligations, which are not imposed by law, but, are incurred by a party to a contract by his own agreement, he is not excused from a failure to perform, because thereafter he is disabled to perform them, because of casualties, without any fault upon his part, as it was his right to make provisions against such when the contract was entered into.

3. Contracts—Failure to Perform.—Parties may insert such lawful stipulations in their contracts, as they may agree upon, and they may also agree, as to what the results of a failure to perform the stipulations of a contract shall be, and if the parties are sui juris, they must submit to the results, which they agree shall follow the failure to perform.

4. Contracts—Time Essence of Contract.—Parties · may expressly agree, that the time, within which obligations of a contract are to be performed, shall be of the essence of the contract, and if time is not made so by express stipulation, it will be held to be such, if from the nature of the contract, it was so intended.

5. Contrcats—Waiver of Time in Performance.—A waiver of time in the performance of a contract may be made by the party for whose benefit the stipulation was made, but, a mere waiver must be supported by a consideration, and intended to be made, with a full knowledge of the facts.

6. Contracts—Waiver—Estoppel.—A waiver made without consideration, but, relied and acted upon by the other party to the contract may constitute an estoppel, but, an essential element of an estoppel is, that the acts or declarations of the party against whom the estoppel is pleaded, must have induced the other party to act to his prejudice if the estoppel is not sustained.

7. Principal and Agent—Knowledge of Agent.—The knowledge of an agent is not imputed to his principal, when in the transaction, the interests of the agent are adverse to the interests of the principal, and the agent is not pretending to act for the principal, and the party dealt with has knowledge that the agent is acting for himself and not the principal.

SIMS, RODES & SIMS for plaintiffs.

CHANEY & DIXON and THOMAS & THOMAS for defendants.

Opinion by Judge Hurt—Overruling motion to dissolve temporary injunction.

In the circuit court, after the answer of the defendant had been filed, upon notice, and a hearing of all the evidence which either party desired to offer, an injunction was granted to the plaintiffs against the defendants, George A. Meade, Carroll York, M. M. York, D. A. Scott and J. N. Glass forbidding them to enter upon a tract of land which was covered by a lease owned by the Future Oli & Gas Co., for any purpose except to remove a drilling machine and attachments which they had placed thereon, and from boring for oil or gas upon the land, as well as from in any way interfering with or obstructing the plaintiffs, in entering upon the land or developing it for the production of oil and gas during the pendency of this action, and until final judgment herein. The four last named defendants have made a motion before me as a judge of the Court of Appeals, to dissolve the temporary injunction granted by the circuit court. As appears from the record filed before me, the chief facts which the controversy between the plaintiffs and defendants, and out of which the injunction complained of arose, are that the plaintiffs, Decourcey F. Niles, Edward M. Shaw, W. J. Balmer, Charles H. Smith, George Daras, Leonidas A. L. Day, Carl J. Mattson, Gus L. Young and James F. Kearney, together with the defendants, George Meade, Florence Meade and Grover Van Vliett, all of whom reside in Chicago, Ill., compose a joint association for the purpose and jointly engaged under the name of the Future Oil & Gas Co. in the business of buying and selling leases upon lands for the production of oil and gas and operating upon the lands, covered by the leases, for the purpose of procuring oil and gas therefrom. The association is not incorporated, but, is an organization by agreement among the members, and has a president, vice president, secretary and trustees all of whom compose a board of directors for the control and management of the affairs of the association. The association, which I will hereafter call the Future Oil & Gas Co. became the owner of an oil and gas lease upon twenty-five acres of land, and by the authority of a resolution adopted by its governing authorities on the 13th day of July, 1920, entered into a contract with its president, the defendant George A. Meade, by which he was authorized to explore and bore for oil upon the premises and in the event of success in procuring oil, he was to

receive a certain per centum of the production. The contract between the Future Oil & Gas Co. and Meade was executed on July 16, 1920. Thereafter on July 30, 1920, Meade made an assignment and transfer of his rights and obligations under the contract to a partnership composed of defendants, Carroll York, J. N. Glass, M. M. York, and D. A. Scott, who appear to do business under the name of York & Glass, and under which name they will be hereafter referred to. The contract provided that Meade should dig a certain number of wells, upon the premises covered by the lease. The depth of the wells was provided for and the interests of each of the parties in the products when the oil should be found was set out in the contract. The land covered by the lease was situated in a section of the country in which the operation to procure oil and gas by drilling wells was very active, and on an adjoining tract, and only a few yards from the line separating it from the tract of land in controversy, about the 20th of August, 1920, operations to secure oil resulted in striking a flow from a well which was reputed to produce one thousand barrels of oil per day. Among other provisions and conditions of the contract between the Future Oil & Gas Co. and Meade were the following:

"Party of the second part (Meade) agrees to have a 'drilling rig' on the lease within thirty days from the date hereof, or grant the parties of the first part (Future Oil & Gas Co.) the privilege of securing a machine and putting it on the lease at the second parties' expense, and further agrees to diligently pursue operations from the time of spudding in until the well or wells provided for in this contract or assignment shall have been completed. Failure to comply with the obligations mentioned herein and within the time limit herein set forth shall render this assignment null and void, and of no further force or effect.

"Party of the second part agrees to deposit a copy of this contract in the Citizens National Bank of Bowling Green, Ky., with instructions that this contract shall immediately revert to the parties of the first part, if any part of the foregoing contract is not complied with within the time limit set out and provided for in this contract."

Meade did nothing looking to complying with the terms of the contract on his part from the date of its execution up to the time he assigned and transferred it to York & Glass, but they at once, after having obtained an assignment of the contract, with all reasonable diligence proceeded to endeavor to place a "drilling rig" upon

the leased lands and in order to do so purchased a "drilling rig" at a cost of three thousand, seven hundred and fifty dollars. The machinery purchased by them was situated about nineteen miles from the land, and they removed four truck loads of tools and necessary attachments of the "rig" for the production of oil, upon the lands between 4th and 9th days of August, but on account of the heavy rains, the rough and slippery condition of the road, over which the "rig" had to be hauled and the unusual high waters, they did not succeed in placing the "rig" entire, upon the lands until the 23rd day of August, and did not commence to drill until the following day. The expenses incurred in placing the rig upon the lands amounted in the neighborhood of one thousand dollars.

There is no dispute as to the facts relating to the endeavors of the defendants to place a "drilling rig" upon the lands and that they did not succeed in so doing within thirty days from the date of the contract, and, if to do so, was a precedent condition, necessary to be performed by the defendants to entitle them to go upon the lands for any purpose, or to operate thereon for oil or gas, and the failure to perform the condition terminated and concluded any rights which they had under the contract, their operations after thirty days from the date of the contract were unauthorized by plaintiffs; and for the defendants against the consent of the owners of the lease, to continue from day to day to operate upon the lands and thereby to interfere and prevent the owners from conducting other operations desired by them, would be a violation of the rights of the owners, which would justify the interposition of a court of equity by the way of an injunction to restrain the commission of repeated trespasses, threatened to be repeated from day to day, and of such character, on account of the nature of plaintiffs' estate in the land, calculated to destroy the substance of it, in the form it is now held, and to result in a multiplicity of suits, at law. If no contract exists between the parties which authorizes the defendants to go upon the land, with drilling machines and to operate thereon they occupy the positions of trespassers, as all the authorities hold, that to perform the obligations of a contract, which once existed, but, which according to its terms has terminated, without the consent of the other party to it, is not a performance of the former contract.

The failure to perform the stipulations of a contract, such as the ones undertaken by the defendants and their

assignor, is not excused by the obligor being disabled to perform them because of casualties arising without fault upon his part, as the conditions of this contract were not impossible of performance when undertaken, and the assignor of defendants in making the contract did not make any provisions against such conditions, as thereafter made the stipulations difficult of performance by the defendants. Home Ins. Co. v. Wood, 139 Ky. 657; Bohannon v. Lewis, 19 K. L. R. 380; Helburn v. Mofford, 70 Ky. 174; Stevens, etc. v. Lewis, etc., 170 Ky. 238; Runyon v. Culver, 168 Ky. 45. Besides, Meade after entering into the contract made no effort to perform the condition precedent, until practically one-half of the time, within which it was to be performed, had expired, and the defendants accepted the assignment with full knowledge of the time, within which they were required to perform it.

The grounds upon which the defendants insist that the injunction was erroneously granted, is that the thirty days from the execution of the contract within which the stipulations in it were to be performed, or else the contract shall be null and void, did not include the stipulation, that a "drilling rig" should be placed upon the premises within thirty days from the execution of the contract, and the failure to perform that stipulation within the thirty days did not terminate the contract or conclude the defendants' right to proceed to the performance of the other stipulations, but, under the contract the only relief which the plaintiffs would have from a failure to perform that stipulation would be to place a "drilling rig" upon the premises, and require the defendants to pay the expense of it. If the contract was so construed and plaintiffs had exercised the right to place a "drilling rig" upon the land, in default of the defendants having done so, the defendants would still have failed to perform the contract by making a diligent beginning of the operation of the "rig," within the time prescribed by the contract; and in that event they would have suffered the loss of the contract, and in addition the costs of placing the "rig" upon the property, in the nature of a penalty or pure forfeiture, and the plaintiffs would have lost the benefits of the main purpose of the contract, which was the speedy development of the oil and gas in the land, if any there was. From the fact, that the contract specifically provides, that Meade should place a "drilling rig" upon the land, within thirty days, and which is the only obligation of the contract speci-

fically mentioned as having to be performed within that time, if the plaintiffs should be compelled to suffer an avoidance of the force of that stipulation, there would be no meaning or force to the clause of the contract which provides, that "Failure to comply with the obligations mentioned herein, and within the time limit herein set forth shall render this assignment null and void and of no further force or effect," nor would there be meaning or force to be attached to the stipulation, which provides for holding a copy of the contract in escrow, and "that this contract shall immediately revert to the parties of the first part, if any part of the foregoing contract is not complied with within the time limit set out and provided for in this contract." The obligation to place the "rig" upon the leased land within thirty days from the execution of the contract is not excepted from the operation of either of the stipulations mentioned and I do not feel at liberty to disregard their provisions. I conclude from the nature of the contract, its subject matter, and all of its provisions, that the parties to it intended by it, to obligate Meade to place a "rig" furnished with the necessary attachments to bore for oil, upon the premises and to begin to operate the "rig" for that purpose within thirty days from the date of the contract, and a failure to do so, it was agreed, should terminate the contract, and the stipulation that, in default of his placing the "rig" on the premises, within the time limited for it, that plaintiffs might do so, at his expense, was a penalty agreed upon for his failure, to induce certain and prompt compliance with the contract. If it was incumbent upon the plaintiffs to make an election, as to whether they would proceed to place a "drilling rig" upon the land, at defendant's cost or insist upon the termination of the entire contract, they made the election at once, and as soon as they knew of the failure of defendants to perform the contract. Parties may place such lawful stipulations in their contracts, as they may see fit and mutually agree upon and if *sui juris* they are bound by them and must submit to such results as they agree shall follow a failure to perform, and it is always open to them to expressly agree that time shall be of the essence of the contract, and if time is not made so, by express stipulation, it may be held to be such if from the nature of the contract it was so intended. In the present instance, the express terms, as well as the nature and purposes of the contract, conclusively show, that the parties intended, that time should be considered one of its essential elements. From

the nature of oil, the fluctuations in its value, the uncertainty attending operations for it, and the necessity of speedy operations upon one's lands, when wells are being sunk in the immediate vicinity, make time in nearly every instance of the essence of contracts relating to the development of oil. The letters of Meade to Sims, dated August 9, and August 12th, and the letter which York caused Sims to write to Meade on August 13th, seem to indicate, that they considered that the time fixed for the placing of the "rig" upon the property, for the beginning of operations, to be of the essence of the contract. The parties having mutually agreed, that their contractual rights under the contract should cease and be void, that is, as if no such contract had ever existed, upon the failure of Meade to perform the stipulations relating to placing the "rig" and beginning operations within thirty days from July 16, and defendants as assignees of Meade having failed to perform the contract in that regard, the contract terminated, and they had no further rights under it. They insist, however, that plaintiffs waived the time limit for performance fixed in the contract, and are, also, estopped from claiming, that they have forfeited their right to proceed under it. Even where time is expressly stipulated to be of the essence of a contract, the party in whose favor the stipulation is made may waive it by recognizing the contract as still in force, after the time for performance has passed, or by directing changes which make more time necessary. The act constituting the waiver relied upon is a resolution ratifying the contract adopted by the plaintiffs on the 19th day of August, and a copy of which was secured by Meade and sent to defendants, who received it on the 23rd of August. A mere waiver to be effective for the other party to a contract, however, must be supported by a consideration either good or valuable, and the party making the waiver must have been fully informed as to the material facts and intentionally made the waiver. Neither of these essential elements of a waiver appear in this case. It is not supported by any consideration, nor did the plaintiffs intend to waive the failure to comply with the contract, nor did they have knowledge, that the contract had not been performed. The letter from Sims to Meade, which he says that he read to plaintiffs does not show, that there was any failure of performance, and they state, that Meade did not read any letter, but informed them that the contract had been complied with. The resolution of ratification had no

reference to whether the contract had or had not been performed, but, was to cure a supposed defect in the resolution of August 13th authorizing the contract to be made.

The estoppel relied upon is that plaintiffs having knowledge of the fact, that the "drilling rig" had not been placed upon the property, within thirty days from the date of the contract, ratified the contract and provided the defendants with a copy of the ratification, and they relied upon same, and were induced to expend money, and move the "rig" upon the land, and to proceed to operate same, and, further that plaintiffs with knowledge of the facts stood by and permitted defendants to undergo expense and perform labor, as though in performance of the contract, and should not now be permitted to claim, that the contract had terminated, to the prejudice of defendants. The evidence, however, proves, that neither of the plaintiffs at the time the ratification resolution was adopted and a copy furnished to Meade, knew anything of the failure by Meade to perform the contract, within the time fixed by it, and it does not appear that either of them knew, that Meade had assigned the contract. A copy of the resolution of the association authorizing the contract to be made had been requested of Meade by the defendant, York, and the resolution ratifying that one was sent by Meade, but neither of the defendants saw it or knew of it, until the evening or afternoon of the 23rd, and after the expenses of placing the "rig" upon the land had been incurred, and at the same time, the defendants were informed that plaintiffs, were claiming that the contract with Meade had terminated and were directing their attorneys to prevent any operations upon the leased land, by any one. Hence no act or conduct of plaintiffs could have been relied on by defendants or could have induced them to perform either labor or made expenditures upon the land under the belief that they were consenting to it, which would be necessary to constitute an estoppel. Kenyon Realty Co. v. National Deposit Bank, 140 Ky. 133; Pemberton v. Price, 144 Ky. 518; Jett v. Jett, 171 Ky. 548; Trimble v. King, 131 Ky. 1; Alexander v. Woodford, etc., 90 Ky. 215; Foster v. Shreve, 6 Bush 519; Ringo v. Warder, 6 B. M. 514; Phillips v. Clark, 4 Met. 348; Brothers v. Porter, 6 B. M. 106; Shipp v. Swann, 2 Bibb. 82; McAdams v. Haines, 9 Bush 15.

It is insisted that Meade, who was a member of the plaintiff association and its president knew all of the facts, in regard to defendants' performance of his con-

tract with the association, and that same had not been performed in accordance with the stipulation as to time, when the ratification resolution was adopted, and that his knowledge should be imputed to the association and thereby it should be bound and upon his supposed knowledge is predicated both the waiver and estoppel claimed. The knowledge of an agent whose interest in a transaction is adverse to that of his principal as a rule is not imputable to the principal, because of the want of a presumption, that he will inform the principal. Miller v. Jones, 32 R. 1078; Randolph v. Ballard County Bank, 142 Ky. 145; Day v. Exchange Bank, 117 Ky. 357; Sebald v. Citizens Deposit Bank, 105 S. W. 30; Taulbee v. Hargis, 173 Ky. 445. In this case, Meade was not pretending to represent the plaintiff association, in the transactions between him and defendants, and they were not misled by any belief of that kind, and hence the transactions are not within the rule stated in the cases of Mutual Life Ins. Co. v. Friends' Lodge, 29 K. L. R. 394; or Citizens Savings Bank v. Walden, 21 K. L. R. 739, nor Teague v. White Plains Coal Co. Hence, I am constrained, upon the record, to overrule the motion to dissolve the temporary injunction. Chief Justice Carroll, and Judges Sampson and Settle, sat with me in the consideration of the motion and concur in the conclusion reached.