## Bell v. Kilburn, et al.

(Decided November 18, 1921.)

### Appeal from Lee Circuit Court.

1. Mines and Minerals—Forfeiture Clause in Oil and Gas Lease.— Forfeiture clauses in oil and gas leases are an exception to the general rule that forfeitures are not favored.

2. Mines and Minerals—Forfeiture Clauses in Oil and Gas Leases.— The forfeiture clause in an oil and gas lease is for the sole benefit and protection of the lessor which he may enforce according to its terms or waive as he likes unless under all the circumstances a forfeiture would be unconscionable.

3. Mines and Minerals—Forfeiture Clauses in Oil and Gas Leases.— Where a lease provided for forfeiture unless the grantee placed a drilling machine on the premises within sixty days or paid lessor $510.00 immediately thereafter, and the lessee did not place the machine on the premises within sixty days or offer to pay the $510.00 for three days thereafter, which the lessor then refused to accept, a forfeiture is upheld.

4. Mines and Minerals—Lease—Forfeitures.—Such forfeiture not unconscionable where only excuses for failure to pay promptly were fault of lessee and no profit accrued to lessor by bona fide attempt of lessee to perform the contract.

L. G. CAMPBELL and H. C. GILLIS for appellant.

HURST & ROSE, SAM HURST and E. B. ROSE for appellees.

Opinion of the Court by Judge Clarke—Affirming.

The appellees, Green Kilburn, A. H. Bowman and J. P. Sutton, on July 23, 1919, executed and delivered to the appellant, C. L. Bell, a written assignment of oil and gas leases which they held upon two tracts of land on Mill branch in Lee county, Ky., reserving, however, to themselves one-sixteenth of all the oil produced therefrom. The consideration for the assignment was $1.00 in hand paid and "the covenants and agreements of the party of the second part (Bell) hereafter set out." These covenants were that Bell would (1) pay the rentals and do all things necessary to keep the leases in full force and effect; (2) deliver the reserved one-sixteenth of the oil to appellees free of costs, and (3) begin drilling in good faith within sixty days or pay the appellees $510.00 for an extension of ninety days in which to begin operations. Attached to and part of the last named agreement is this provision of forfeiture:

"But in the event that the said party of the second part fails to place a driling machine on said premises within said sixty (60) days from date or pay said sum of five hundred and ten dollars ($510.00) immediately upon the expiration of sixty (60) days from date hereof, then this assignment shall be null and void and of no effect and the said party of the second part shall not have any rights hereunder or in said leases or leased premises."

When the sixty days expired on September 21st Bell had not begun to drill a well or placed a machine on the premises, but he had paid the rentals due to landowners up to that time and he had surveyed the two tracts of land and placed thereon at the place selected for drilling the well some pipes and casings. On September 24th he called Bowman on the 'phone from Paris, Ky., and told him he would be in Beattyville the next day to pay the $510.00, and was informed by Bowman that the lease had been forfeited and the payment would not be accepted. Bell, nevertheless, went to Beattyville the next day and conversed with the appellees about making the payment which they again told him they would not accept, and the parties had another similar conversation about the matter on September 30th. On October 2nd Bell tendered the $510.00 and when appellees refused to accept same announced his intention of placing upon the premises a drilling machine he then had on the way and of going ahead under the assignment which he insisted had not

been forfeited as claimed by appellees. To prevent him from so doing appellees the same day filed this action and procured a temporary injunction, which upon trial was made permanent and Bell has appealed.

Appellant's first reliance for a reversal is upon the familiar general rule that forfeitures are not favored in law, and he seeks under that rule to have the forfeiture provision in his contract construed as a covenant intended by the parties simply to secure payment of the $510.00 as like provisions are construed always in mortgages and usually in ordinary leases, rather than as a forfeiture bearing condition; but in none of the cases cited in support of his contention was an oil and gas lease involved. That such a provision in this character of leases is recognized as an exception to the above general rule and favored by the courts is just as well settled in this jurisdiction and quite generally as the rule itself, and results from the fact that because of the transitory and elusive character of the exceeding valuable substances which the lease is designed to entrap while under the lessor's land, the time allowed the lessee for beginning and completing the exploration must necessarily be presumed to be of the essence of the contract, since delay alone by the lessee in the performance of the contract may defeat entirely the lessor's purpose in executing it, whereas in mortgages and usually such results cannot follow mere delay, and a contrary presumption is the more reasonable and just rule of law. For the same reasons a forfeiture clause in such leases is uniformly held to be valid and for the sole benefit and protection of the lessor, which he may elect to enforce according to its terms or waive as he likes unless under all of the circumstances a forfeiture would be unconscionable. Many cases so holding will be found cited in support of the text of like effect in 18 R. C. L. 1212, et seq., and such has been the rule uniformly observed in this state; except that we have gone much farther than most courts and possibly farther than any other in favoring and enforcing forfeitures of such leases by the lessor; and we have been unable to find any case in which a forfeiture was denied by this court upon the ground that to do so would be unconscionable, but unquestionably such a modification of the rule is proper when as here a court of equity is asked to lend its aid to the enforcement of the forfeiture.

In Monarch Oil & Gas Co. v. Richardson, 124 Ky. 602, 99 S. W. 668, we adopted a rule of construction that has been uniformly followed in spite of much criticism, and which enlarges the express provisions of forfeiture by giving force to the manifest intention of the parties and permits the lessor to force a forfeiture upon equitable terms, even within the ultimate term of the lease where the evident purpose of the lease was a speedy development of the property and the extension rentals were but nominal.

In no case have we ever refused to enforce a forfeiture according to its terms in such a lease; and this lease expressly provides for a forfeiture if the lessee failed to place a drilling machine on the premises within sixty days or pay $510.00 "immediately" upon the expiration of the sixty days. Hence as the sixty days expired September 21st and the lessee had not then placed a drilling machine on the premises and did not even mention the payment of the $510.00 until September 24th it is plain that the lease had been forfeited according to its unambiguous terms and must be so adjudged unless as appellant also contends "immediately" means only within a reasonable time and the payment was so tendered and refused, or unless to do so would be unconscionable under all of the facts and circumstances of this case.

The word immediately ordinarily means instantaneously, forthwith or without the intervention of time, but we readily concede that as used in contracts or statutes it usually is not to be construed literally but rather as meaning within a reasonable time. Nor have we any fault to find with any of the cases cited by appellant where it is so construed, namely: White Cotton v. Simpson, 4 J. J. Mar. 11; Fidelity & Guaranty Co. v. Western Bank, 29 Ky. Law Rep. 639; Continental Casualty Co. v. Mathis, 150 Ky. 477, 150 S. W. 507, and Wolflin-Lehring Lumber Co. v. Mosely, 152 Ky. 701, 154 S. W.

. In none of these cases, however, was the question of time of such consequence to the parties and so essentially a part of their contract as here, and it is obvious that what would be a reasonable time in one case would be quite unreasonable under other conditions and circumstances. Hence in every case where it means a reasonable time rather than instantly, its exact meaning must be determined by the attendant circumstances and the connection in which it is used.

Considering the circumstances and the evident purpose of the parties in making the contract, as well as their subsequent actions and conversations, we are confident the word was used to mean and so understood by all parties if not instantly at least only so long as was reasonably necessary in the regular course of business to make the payment after the expiration of the sixty days and this easily could have been done during the next business day unless hindered by the appellees. There is no proof whatever that appellees hindered or misled appellant in any way and we are of the opinion that under no possible construction of the contract can appellant avoid a forfeiture.

The only remaining question, then, is whether or not under all the circumstances a forfeiture in accordance with the terms of the contract would be unconscionable in this case and to this there can be but one answer. While appellant testified he expended about $2,300.00 in preparing to drill a well on the premises and that his delay beyond the sixty days was unavoidable, the proof shows a loss of only a little over $100.00 to him and that the delay was in no wise occasioned by the appellees but resulted from his consideration of his own convenience rather than the terms of his contract. But, however this may be, it is because of the failure to pay the $510.00 promptly as agreed that a forfeiture will result if at all, and it is extremely doubtful from the evidence whether appellant intended to or could have paid the $510.00 until a few days after the expiration of the sixty days when a good well came in on a nearby farm. The only reasons he offered appellees or urges here for failing to make the payment promptly are that he was financially embarrassed at the time and that the remittance of a check for the amount by his foreman, and of which he did not learn until after the 24th at least, was delayed in the mails from September 19th until September 30th.

Surely the obligor's inability to meet an assumed financial obligation within the time agreed upon cannot excuse him from the stipulated and legally favored consequences of his failure to do so; nor can he with any better reason complain if the failure results wholly from even a *bona fide* attempt to make the payment in an unauthorized method. In other words, if he alone is responsible for his failure to perform his contract it is not unconscionable that he should bear the penalty he has agreed shall result therefrom. It is only when the fail-

ure to perform results from circumstances beyond his control and not within the contemplation of the parties or from some act of the adverse party and usually because of some profit or advantage that will accrue to the adverse party from his effort to perform, that under the authorities and upon reason it becomes unconscionable for the adverse party to insist upon a forfeiture of a contract of this kind upon the terms agreed upon.

The very purpose of the forfeiture provision in such a contract as this is to protect the lessor against the lessee's negligence or inability to perform his contract within the limited time allowed him for so doing; and that purpose would be entirely disregarded if such excuses as appellant offers here could avoid the forfeiture.

Wherefore, the judgment is affirmed.