## Smith et al. v. White Star Coal Company.

(Decided December 21, 1928.)

C. B. SPICER and T. R. McBRAYER for appellants.

LEE & SNYDER for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

Appellants, who were the plaintiffs below, brought this action against the White Star Coal Company to recover damages for the alleged breach of a contract, and, at the conclusion of all the evidence, defendant's motion for a directed verdict in its favor was sustained.

On May 2, 1922, the White Star Coal Company entered into a written contract with E. H. Hollinsworth and three others, in which it was agreed that Hollinsworth and his associates were to mine all the coal in the part of No. 1 mine known as left entries, Nos. 4, 5, 6, 7, 8, 9, and 10 off the main south entry, and deliver same to the side track in main south entry between entries 7 and 8, and the company agreed to furnish all mine timbers, bonds, rails, brattice lumber, spikes, a mining machine, and necessary repairs therefor, current to operate such machine, and if necessary, as many as two mules to haul the coal to the side track. Hollinsworth and his associates agreed to do the track laying, bonding, wiring, timbering, and all other work incident to mining and delivering the coal and were to receive $1.20 per ton for coal delivered at the side track. It was agreed that, if the scale of wages in the Harlan field should be raised or lowered during the term of the contract, the contract price to Hollinsworth and his associates should be raised or lowered proportionately.

On September 1, 1923, Hollinsworth and his associates assigned the contract to appellants W. R. Blevins and A. J. Smith. This assignment was assented to in writing by the White Star Coal Company. The parties continued to operate under the contract until March, 1924, when the mine was closed on account of the depressed condition of the coal business. It remained closed until September, 1925, a period of about 18 months, and during this period no complaint was made by appellants. On September 14, 1925, the White Star Coal Company and the appellants W. R. Blevins, C. H. Blevins, and A. J. Smith entered into a written contract which contained the following introductory clause:

"Whereas, certain contracts for the mining of coal exists between the parties for the mining of coal at the mines of first party at White Star, Kentucky, and whereas, since the execution of said contracts, certain conditions have developed in the coal

industry as regards wages and prices of coal on the market that makes it prohibitive for the mines to operate under said contracts, and whereas, it is the mutual desire of the parties hereto that said contracts be modified so that the mines may resume operations and the premises considered, it is mutually agreed that said contracts be and the same is hereby amended and modified as hereinafter named.''

This contract contained substantially the same provisions as those in the contract of May 2, 1922, except that appellants were to receive $1 per ton for coal mined and delivered at the tipple instead of $1.20 per ton for coal delivered at the side track in the main south entry. In addition to the provisions contained in the first contract, the contract of September 14, 1925, contained these provisions:

''It is understood that if at any time the market price of coal is such that the company cannot operate the mines except at a loss to it on the wage scale herein provided, then in such event no damages shall accrue to it by reason of shutting the mines down and not operating; however in such event this contract is left open for modification of the wage to meet coal market conditions so that said mine may operate at a reasonable and just profit.

''This agreement hereby supersedes and takes the place of all former contracts now existing between the parties hereto and is to become binding upon its signature by the parties.''

Appellants sublet the work to be done by them to Alex Moore, Evart Moore, and John Sharp, who were to receive 92 cents per ton for all coal mined and delivered under the contract with the coal company, thus leaving a profit to appellants of 8 cents per ton.

During the time the mine had remained idle, water had accumulated therein, and was in all of the entries named in the contract, except entry No. 4. The company had theretofore maintained in this part of the mine a small electric pump, attached to which was a 1½-inch pipe, and during the former operations this pump had kept the mine free from water. The company reinstalled this pump equipped with 1½-inch pipe, and it ·was as-

sumed by all parties that this would be sufficient to remove the water. The Moores and Sharp mined and delivered all the coal in entry No. 4; this work being completed within a period of about four months. While the company had been continuously pumping the water, it had not been appreciably lowered, and, when all the coal from entry No. 4 had been removed, the Moores and Sharp were unable to proceed with their work in the other entries on account of the water.

On October 28, 1926, appellants instituted this action in the Harlan circuit court, in which they sought to recover damages in the sum of $11,500 for the alleged breach of the contract of September 14, 1925. They alleged in their petition that they had at all times been ready, able, and willing to comply with the provisions of the contract, and that the defendant had breached the contract, in that it had refused to allow them to proceed with the work. Appellants' claim is grounded on the theory that appellee was obligated at all hazards to remove the water from its mine in order to enable appellants to carry out their contract. Nothing appears in the contract relative to the company's duty to keep the mine free from water, but it seems the parties proceeded upon the theory that it was the duty of the company to do what was ordinarily and customarily done under similar circumstances to remove the water from its mine. There was no express contract providing for the removal of the water by the company, but at the most only an implied contract that the company would make a reasonable effort to accomplish that result.

The rule that a person will not be permitted to excuse himself from an obligation created by an express contract by pleading impossibility of performance, illustrated by Bohannons v. Lewis, 3 T. B. Mon, 376; Home Insurance Company v. Wood, 139 Ky. 657, 72 S. W. 15, 24 Ky. Law Rep. 1638, Ann. Cas. 1912B, 373; Runyon v. Culver, 168 Ky. 45, 181 S. W. 640, L. R. A. 1916F, 3; Stevens, etc. v. Lewis, etc., 170 Ky. 238, 185 S. W. 873; Niles v. Meade, 189 Ky. 243, 224 S. W. 854, and other similar cases, has no application to the facts of this case.

None of the appellants claim that appellee ordered the work stopped, but they concede that they were forced to cease working under the contract on account of the flooding of the mine. They attempted to show by other

witnesses that the small pump was removed and that appellee's superintendent stated that portion of the mine would be closed. The proof conclusively shows, however, that the small pump was removed because, after a thorough trial, it was found that it was not of sufficient capacity to pump the water from the mine; that appellee immediately purchased 3,500 feet of 4-inch pipe, and installed a much larger pump, and, in addition, drove a tunnel from the flooded portion of the mine to a point on the outside that reduced the distance necessary to carry the water, and an effort was made to siphon the water through this tunnel. All of this was done at great expense, and, at the time of the trial, appellee was still endeavoring to remove the water from its mine, but without success. It is clear that appellee did all that was customary or that could reasonably be expected of it to remove the water, and made a far greater effort to this end than the implied obligation resting upon it required. There is no claim either by pleading or proof that the accumulation of water resulted from any negligence of the appellee.

There was no proof authorizing the submission of the case to the jury, and the trial court properly sustained appellee's motion for a directed verdict.

Judgment affirmed.