**Charles E. LEDFORD and Lillian H. Ledford, Appellants,**

**v.**

**Tommy ATKINS, General Partner of Tommy Atkins Producing Company, a limited partnership d/b/a Melcher Atkins Oil, Appellee.**

Court of Appeals of Kentucky.

Feb. 10, 1967.

Edward F. Prichard, Jr., Frankfort, for appellants.

E. Gaines Davis, Jr., Smith, Reed, Yessin & Davis, Frankfort, for appellee.

OSBORNE, Judge.

This is an action for a declaratory judgment as to the rights of the parties to an assignment of an oil lease. Appellants Ledford were lessees of another, whose identity is not disclosed in these proceedings. Ledford, in turn, assigned the leased premises consisting of several tracts to Harry Kaplin of Skokie, Illinois. Kaplin, in turn, made an assignment of his interest to the appellee herein, Tommy Atkins, general partner of Tommy Atkins Producing Company, a partnership.

The complaint alleges that the plaintiffs are holders of the lease by virtue of an assignment from Kaplin; that the lease provides for certain delay rentals to be paid on or before May 1, 1965, and that the failure to make these payments on or before that date would void the assignment. It further alleges that Atkins, who was managing partner of the partnership, was ill.

"3. Tommy Atkins, managing partner of plaintiff, was stricken with a very serious illness in March of 1965 which required extensive surgery on March 22, 1965 and put him in a comatose condition for twenty-three days, or until April 14, 1965. He remained in the hospital until April 25, 1965, and required a special nurse at home until May 2, 1965.

"4. As soon as he regained his senses, Atkins notified his limited partner, Martin Melcher, to pay the delay rentals, and on May 7, 1965, a check for Two Thousand Seven Hundred Seventy-Eight Dollars ($2,778.00) was mailed to defendants via air mail. This check was returned by defendants with a letter stating that it had been received on the 10th; that the amount was erroneous, and that the tender too (sic) late, and that defend-

ants were treating the assignment as void by default."

The complaint further alleges that on May 13, 1965, another check in the amount of $3182.00, along with appropriate interest, was mailed to the appellants. Plaintiff also alleges in his complaint that he has invested $250,000.00 in the leasehold and stands to lose this amount if the lease is forfeited. The defendants filed a motion to dismiss the action, along with their answer, in which they denied in part and admitted in part the allegations of the plaintiff in the complaint.

When the motion to dismiss was brought on for hearing, the parties stipulated and agreed that it should be treated as a motion for summary judgment. At this time, they each filed with the trial court exhaustive briefs in support of their respective contentions. The court, after considering the facts and making a most exhaustive examination of the law, rendered a well-considered and well-written opinion wherein he refused to declare a forfeiture of the lease because of the delay in making payment. The substance of the trial court's ruling is as follows:

"In deciding the pending motion, the allegations of the complaint must be taken as true. The plaintiff lessee was 7 days late in tendering something less than full payment and full payment with interest was tendered 13 days late. Plaintiff was seriously ill on May 1st, the due date, and prior thereto. Plaintiff has expended $250,000.00 in working this lease. Whether plaintiff expended this amount or something less, he was apparently trying to find oil. A search for oil is the essence of this lease. Time of payment of rentals is not of the essence in this lease. It has been urged that there is no distinction between failure to develop and failure to pay rentals, and that the cases cited wherein a forfeiture was adjudged for a failure to develop are applicable to the present situation. I am of the opinion that there

is a very distinct difference between the two. The search for oil is jeopardized in one and not in the other.

"On May 13th, the defendant had everything to which he was entitled under the lease—his rental with interest and a lessee who apparently had demonstrated something more than a passing interest in finding oil. This Court will not make time of the essence in this lease where the parties did not do so. This court cannot exact so great a penalty from a lessee who was 7 or 13 days late in paying his rental. Under this courts construction of the lease under the facts as they appear in the complaint, there has been no forfeiture. The motion for summary judgment is overruled."

The question now before us is, did the trial court commit error in refusing to forfeit the lease? We believe not. Appellants contend, and it is true, that time is normally the essence of these contracts and the courts are prone to forfeit them when the time condition is not promptly met. Especially has this been true in Texas and some few other states which seem to recognize no exception to the rule. However, we believe the better rule, and the one generally followed by the majority of states, is to make allowances for extraordinary circumstances and not to order a forfeiture where the only failure has been a short delay in making payment. Especially when the forfeiture would result in the loss of a substantial investment on the part of the lessee and unjustly enrich the lessor. This rule is recognized in 5 A.L.R.2d, pp. 994 and 995.

"With allowances to be made for ordinary variances in rulings from state to state, explained in part at least by differences in the circumstances of cases, and except for negative doctrines supported with more or less consistency in one or two jurisdictions, the correct general conclusion seems to be that equity will grant relief from termination of an 'unless' lease, or from forfeiture of an

'or' or other lease, for nonpayment of delay rental, where it appears the leaseholder had fully intended to pay the full amount, but, without gross negligence, and because of accident, mistake, inadvertence, mischance, etc., failed to do so strictly on time."

In Shaffer v. Marks, D.C., 241 F. 139, the court stated in effect that equity does not relieve against termination for intentional failure to pay delay rents on time whether the lease be an "or" or an "unless" lease. Yet, where the intention of the leaseholder was to make payment in strict accordance with the lease, but his attempt to do so was abortive because of some accident or mistake, not the result of his wilful or gross neglect, he may be granted relief. In the course of the opinion, the court states:

"* * * intention to make the stipulated payment in strict accordance with the terms of the lease, but his attempt to do so is abortive because of some accident or mistake, not the result of his wilful neglect or gross negligence, a court of equity may grant him relief as against the forfeiture asserted by the lessor because of such failure, where the lessor has not suffered in any way by the delay and it would be inequitable to enforce the forfeiture."

The courts of this state seem to follow the majority rule. In the case of Bell v. Kilburn, 192 Ky. 809, 234 S.W. 730, we held, where assignment of oil and gas leases required assignee to place drilling machine on premises within specified time or pay a specified amount "immediately" upon expiration of such period of time, assignee's tender of payment three days after expiration of time did not prevent a forfeiture, since assignee was not entitled to any more time than was reasonably necessary in the regular course of business to make the payment after expiration of the specified period.

However, in the case of Trammel Creek Oil and Gas Co. v. Server, 197 Ky. 594, 247 S.W. 753, where the lease didn't contain a specific provision for forfeiture, we reached the opposite result holding that a short delay does not forfeit the lease. In Johnson v. Dodson, 227 Ky. 132, 12 S.W.2d 310, we were faced with a situation of failure to develop in accord with lease and in holding that there was no forfeiture, we stated:

"Forfeiture for nondevelopment, or delay in development, or for a failure to reasonably develop, is highly essential in the business of producing oil, but the law does not favor forfeitures, and none should be allowed without the one claiming the right shall have first placed the other party on notice that a forfeiture will be demanded, unless the terms of the lease as to development are carried out."

So far as we have been able to find, there is no case in this jurisdiction where the failure to meet payments required under a drilling lease was caused by the physical incapacity of the lessee. In one case in Texas where the lessee claimed inability because of sickness of members of his family, Ford v. Barton, Tex.Civ.App., 224 S.W. 268, the court denied relief. However, the courts of Texas follow a minority rule that recognizes no excuse for delay in payment. Thornton on Oil and Gas, Chapter V, section 264, recognizes that there are exceptions to the forfeiture rule. He states the predominant view as follows:

"Forfeiture will be enforced where there is a substantial breach of an implied condition to develop; but not for failure of a strict compliance with requirements as to payment of rentals."

We are of the opinion that equity should not permit the forfeiture of an oil lease because of a delay of 13 days in making payments, where the facts show that the lessee was severely ill and comatose for a period of 23 days, at a critical time when payments came due under the lease. Especially when the facts are considered that he intended to make the payments, and made them immediately upon regaining consciousness. To forfeit the lease under these conditions and

especially so where the lessee stands to lose a substantial investment already made in developing the lease, in our opinion, would be a gross injustice.

The judgment is affirmed.

WILLIAMS, C. J., and STEINFELD, HILL and MONTGOMERY, JJ., concur.

MILLIKEN, J., not sitting.

PALMORE, Judge (dissenting opinion).

The assignment in this case specifically provided that it would terminate upon the assignee's failure to drill or pay the delay rentals when due. Such a provision in an oil and gas development contract not only is "favored by the courts," cf. Bell v. Kilburn, 192 Ky. 809, 234 S.W. 730, 731 (1921), but by statute is made a part of any contract that "provides in substance that actual drilling or development may be postponed by the payment or tender of the rental on or before a certain day." KRS 353.020. "The lease must be construed if possible to bring as strong a pressure to bear as possible on the lessee to begin development as soon as he can. The covenant as to rent must be interpreted in the light of this principle * * *. The provision that the failure to pay stipulated rentals on or before the day provided by the lease for that purpose shall work a forfeiture of such lease has a direct tendency to enforce the lease." Kelley v. Hardwick, 228 Ky. 349, 14 S.W.2d 1098, 1099 (1929).

In Bell v. Kilburn, 192 Ky. 809, 234 S.W. 730 (1921), an assignment required the assignee within 60 days to place a drilling machine on the leasehold or to pay a $510 delay rental. When the 60 days expired he had surveyed the premises and placed pipes and casing preparatory to drilling but had not moved a drilling machine onto the property. His tender of the $510 several days later was rejected, and this court upheld an injunction against his further entry. A similar result was reached in Niles v. Meade, 189 Ky. 243, 224 S.W. 854 (1920),

wherein the assignee had expended $1,000 in preparing the leased premises but was prevented by heavy rains and high waters from placing a drilling rig on the property within the specified time. The following excerpts from the opinion in the last-cited case are appropriate to this case:

"The failure to perform the stipulations of a contract, such as the ones undertaken by the defendants and their assignor, is not excused by the obligor being disabled to perform them because of casualties arising without fault upon his part, and the conditions of this contract were not impossible of performance when undertaken, and the assignor of defendants in making the contract did not make any provisions against such conditions as thereafter made the stipulations difficult of performance by the defendants. * * * Parties may place such lawful stipulations in their contracts as they may see fit and mutually agree upon, and if sui juris they are bound by them, and must submit to such results as they agree shall follow a failure to perform * * *."

As pointed out in Kelley v. Hardwick, 228 Ky. 349, 14 S.W.2d 1098, 1099 (1929), a covenant to pay delay rentals is of no lesser importance than a covenant to drill. They are complementary. Failure to perform one or the other gives the lessor (or, in this case, the assignors) the right to avoid the contract. Hence this case cannot be distinguished from Niles v. Meade, 189 Ky. 243, 224 S.W. 854 (1920), cited above, upon the ground that in the *Niles* case the obligation was to place a drilling rig on the leasehold whereas in this instance it was merely to pay a delay rental, because it is a distinction without a difference in legal principle. And in no sense can this case be distinguished from Bell v. Kilburn, 192 Ky. 809, 234 S.W. 730 (1921), except insofar as the assignee here may be entitled to more sympathy by reason of the particular circumstances that occasioned his default.

I regard the delay rental provision of oil and gas contracts as very little different

from an option. The lessee must either drill or make timely payment to keep the lease alive. When grown men have seen fit to place such a requirement in the contract, without condition, qualification or provision against unforeseen circumstances, I do not feel that a court should modify it.