# Ohio Valley Oil & Gas Company v. Irvin Development Company, et al.

(Decided May 2, 1919.)

## Appeal from Powell Circuit Court.

1. Landlord and Tenant—Lease.—Where subsequent lessee takes with actual and constructive notice of a valid prior lease he acquires no rights as against the prior lessee.

2. Landlord and Tenant—Lease.—Where a lease provides that a well should be drilled within a year, or failing so to do the lessee

should pay a fixed rental, quarterly in advance, a three days' delay in the payment of the rental did not forfeit the lease, the rent having been deposited, as provided in the lease, the money commingled with other money belonging to the lessor and there has been no return or offer to return said rental.

3. Landlord and Tenant—Lease.—The holder of a prior lease is entitled to have his title to the oil and gas quieted as against the owner and a subsequent lessee with notice.

ALBERT B. KERR and B. G. WILLIAMS for appellant

PENDLETON & BUSH and HUGH RIDDLE for appellees.

OPINION OF THE COURT BY JUDGE QUIN—Reversing.

H. S. Rogers and wife, on December 15, 1915, leased to Gaines and Witt the oil and gas privileges on a fifty acre tract of land; this lease was recorded January 27, 1916, the recited consideration being $1.00, and the covenants and agreements contained therein, including a royalty of one-eighth of the oil produced and saved. On June 10th, the same lessors executed what is termed a confirmatory lease on the same premises to V. M. Gaines, one of the original lessees, for a consideration of $12.50; this was dated the same as the original lease, and recorded February 2, 1917. The first lease was for a term of ten years, or as long as oil or gas was produced, the second was for a five year term. January 6, 1917, said lessors executed to C. E. Townsend a lease on the same property; this was recorded January 12, 1917.

Claiming to be the assignee under the lease to Gaines and Witt, appellant instituted suit in the lower court against Townsend's assignee, appellee, the Irvin Development Company, and H. S. Rogers and wife, alleging the above, and further that appellee was boring wells and otherwise attempting to develop said land, and possession of said land had been denied appellant; also that at the time Townsend persuaded and induced Rogers and his wife to make the lease to him, he (Townsend) and his successive assignees, had actual notice of the prior leases, and that all rentals due thereunder had been paid. An injunction was asked against appellee restraining and enjoining it from doing any futher work on the land, and ordering it to remove its machinery therefrom, and asking that appellant's lease be held to be valid and subsisting.

In an amended petition appellant alleged that having failed to drill a well on the leased premises within a year, it caused to be deposited in the Powell County Deposit Bank, December 18, 1916, to the credit of H. S. Rogers, the sum of $12.50, in accordance with the terms of said lease, and said deposit had been retained by Rogers, and no part returned to appellant; that Rogers advised Townsend of the prior lease and he (Townsend) examined the records relative to same, and upon inquiry at the bank was advised that the rent money of $12.50 had been paid. This was before the execution of the Townsend lease. A demurrer to the petition as amended was sustained, hence this appeal.

Inadequacy of consideration, and failure to pay the rental in advance are urged in support of the judgment below, it being further claimed that the Gaines leases were mere unilateral executory contracts, lacking in mutuality, and time must be considered as of the essence of same, and by failure of the lessee to drill, or pay to extend the lease within the year, the contract expired by its own terms. It is not contended that said leases are void. The Gaines leases are not essentially different from the Townsend lease.

Appellee's assignor, before taking his lease, had both actual and constructive notice of the prior leases, the averments of the petition as amended being taken as true, and was also advised the rental had been paid. No wells were drilled in the property the first year, and the rental of $12.50 was not paid until December 18, 1915, three days after it was due, though the bank mentioned in the second lease was directed in a telegram sent December 16th, to make the deposit. The allegation that the deposit was made and the money was commingled with other money which Rogers had in said bank, and upon which he checked, is admitted by the demurrer.

Because of the inability oftentimes on the part of the owner to develop his property, leases of the mineral rights are made to persons prepared and equipped to do the work.

Development of the property and collection of royalties are the purposes upermost in the minds of the lessor in the making of these leases, and the lessee will not be permitted to postpone development of the land for an unreasonable length of time or extend the lease in-

definitely by the payment of a mere nominal rent. Monarch Oil, Gas & Coal Co. v. Richardson, 124 Ky. 602; Dinsmore v. Combs, 177 Ky. 740; Thornton on the Law of Oil & Gas, sec. 75.

In Warren Oil & Gas Co. v. Gilliam, 182 Ky. 807, after referring to the rules above stated, the court says:

"However, the right of the lessor to forfeit the lease for non-development cannot be arbitrarily exercised. He must first notify the lessee that he will no longer accept the annual rentals and permit his land to remain idle and undeveloped, but will require the lessee to execute the contract according to the intention of the parties by beginning its development in good faith, and if, after such notice and demand, the lessee does not begin the development within a reasonable time the lessor may then have the lease forfeited. Monarch Oil, Gas & Coal Co. v. Richardson, *supra*. Here, the lessor did not, at any time, demand that the lessee begin operations and give him a reasonable opportunity to do so. That being true, there is no basis for the contention that the lease in question was forfeited because of the lessee's failure to begin operations."

Aside from the requirement in the Gaines leases that the rent be paid in advance the facts of the two cases are practically identical—the terms, conditions and consideration of the leases are strikingly similar. The lease was held valid, and since defendant in that case had notice of plaintiff's lease, it acquired no rights as against him, and defendant (the subsequent lessee) was accordingly enjoined from interfering with plaintiff in his right to enter on the land and remove the oil.

This opinion, decided after the submission of the case at bar, is conclusive of the questions raised here.

As to the question of the delay in the payment of the rental. The rental was deposited, as provided in the lease, and not rejected or returned, and Townsend, appellee's assignor, had actual and constructive notice of the earlier leases and was advised that the rental had been paid, all before the execution of his lease.

As said in Monarch Oil, Gas & Coal Co. v. Richardson, *supra*: "The lessor in this contract did not at any time exact or demand of the lessee that it commence operating for oil or gas, but accepted the annual rentals paid in full discharge of the obligations of the contract,

although at the end of any rental period he might have declined to accept rent and required the lessee to begin operations for oil or gas."

There was no declination here; on the contrary, at least an implied acceptance of the rental.

Judge Cochran, of the United States District Court for the Eastern District of Kentucky, had before him recently the construction of a similar lease, in the case of Zeigler, et al. v. Hopkins, etc., and in an unreported opinion on a motion to reconsider a decree dismissing the appeal he has gone quite extensively into the authorities construing such leases. Questions similar to those involved on this appeal are discussed at length in the opinion. He holds that the lease is an executed and not an executory instrument. The lease in that case provided for the payment of the rental in advance.

The court held that a failure to pay the rent in advance did not work a forfeiture of the first lease, and among the cases cited and approved by the court is that of Monarch Oil, Gas & Coal Co. v. Richardson, *supra,* and other cases from this court. In the course of the opinion the court says:

"He agrees to so do or pay a certain quarterly rental in advance until one (well) is completed. The agreement to so pay is absolute, if the well is not drilled. If not paid, the rent is recoverable. Though not in hand it is in the bush. There is no provision that, if it is not paid, the interest in the land for the purpose of exploration shall be forfeited. And there is a provision that the lease shall be terminated in another contingency, i. e., upon removal and reconveyance by the lessee. If this line of reasoning is sound it follows that a negative answer must be given to the question put. . . .

"I feel quite sure, therefore, that if the second provision as to exploration was not in the lease in question, there was no forfeiture by the failure to drill within the year or to pay the first quarterly rental in advance. . . .

"What is meant is that the payment of rentals shall fully and completely extend the agreement to explore from time to time until it is complied with by the completion of a well. This is the only thing needing a provision for extension. I, therefore, see nothing in this statement to bring about a different conclusion from that reached without regard to it. . . .

"The plaintiffs were not in fault in not drilling a well within a year. The lease contemplated that they need not do so. It was provided that delay in compliance with the agreement to so do could be secured by payment of rentals. It is alleged that no demand was ever made on plaintiffs to drill a well and that they were ready and able to do so at any time after July 14, 1916, when the lease was assigned to them to drill and prospect on the land for oil and gas and that the lessor though duly notified by the bank of the deposits to her credit has never refused to accept them. The lease under which the operating defendants claim was not made upon her initiative. The allegation is that it was procured by them. It is further alleged that it was so procured with knowledge of complainants. This may mean no more than knowledge of their lease and constructive knowledge arising from its being of record at that. But they also knew of plaintiffs' attempt to make the first quarterly payment or they did not concern themselves to inquire of plaintiffs whether they paid or done anything towards making payment. They ignored plaintiffs completely. But, however this may be, it is distinctly alleged that the operating defendants entered and begun drilling on the land 'with full knowledge and notice of the rights' of the plaintiffs—so that what they have done since entering has been with due appreciation of the risk they were running. There can be no doubt, therefore, that a very strong case for equitable relief is made."

Acceptance of rent for the defaulted period, or any part of it, will generally be a waiver of the right to declare a forfeiture. See Thornton, secs. 184 and 863.

In American Window Glass Co. v. Indiana Natural Gas & Oil Co., et al., 37 Ind. App. 439, 76 N. E. 1006, the court had under consideration the question of the payment of rents past due. The lease, in that case, required the rent to be deposited in a bank. The court held that had the landowners at the end of the term notified the lessee they would not receive any further payments and refused to accept the same, or before payment to the bank had given it notice not to receive any payments for their use and benefit on account of the lease, the rights of the lessee would have been terminated, but this the lessor failed to do. Lessee paid the rental to the bank. The court held that the deposit in the bank constituted

a payment to the lessor, and by reason thereof extended the lease another year.

As to the unilaterality of the Gaines leases, this court, in the case of Hughes, etc. v. Parsons, 183 Ky. 584, has held adversely to appellee's contentions. From the substance of the lease as given in the opinion the provisions are in no material feature different from the Gaines leases, the court saying it was not a unilateral contract.

For the reasons indicated the judgment is reversed with instructions to overrule the demurrer to the petition as amended and for such further proceedings as may not be inconsistent with this opinion.