## Keystone Gas Company v. Salisbury, et al.

(Decided October 28, 1921.)

### Appeal from Floyd Circuit Court.

1. Mines and Minerals—Lease—Consideration.—The real consideration moving a lessor in the execution of an oil and gas lease is the expectation upon his part that the grantee will, within a reasonable time, proceed with the development of his property to

the end that he may reap pecuniary benefit if oil or gas should be produced from his property, and this is true whether it be expressed in the instrument or necessarily implied from the facts.

2. Mines and Minerals—Lease—Operation.—It is the duty of such lessee, when demand is made by the lessor for development, to, within a reasonable time thereafter, begin the operation, upon pain of forfeiture.

3. Mines and Minerals—Lease—Operation.—The drilling by lessee within a prescribed time of a well within a certain territory specified in the lease in accordance with his undertaking, but not on the leased lands, is not such compliance by the lessee as relieves him from the duty under the law to drill within a reasonable time on the leased land after notice from the lessor.

4. Mines and Minerals—Lease—Oils—Contracts.—The provisions of the act of March 18, 1920, validating by its terms all existing contracts and leases for oil and gas rights, have no application where the parties have theretofore asserted their rights under existing law in the courts of this state, and procured a judgment of cancellation.

HOLT, DUNCAN & HOLT and J. C. HOPKINS for appellant.

SMITH & COMBS and J. D. SMITH for appellees.

OPINION OF THE COURT BY TURNER, COMMISSIONER—Affirming.

On the 1st of August, 1913, appellees were the owners of two small tracts of land on Left Beaver Creek in Floyd county, and on that day executed to one Dimick two separate oil and gas leases thereon, the leases being identical in terms so far as the material questions involved are concerned.

The leases specifically grant to Dimick the exclusive right, during the term of ten years, to drill and operate oil and gas wells on the lands, providing for the usual royalties for the owners if oil is found thereon, and for fixed compensation if gas is found, and the additional consideration stated is, (a), the payment of one dollar; (b), to commence operations and complete one well on the leased land within six months from its date or thereafter to pay rentals quarterly in advance at the rate of ten cents per acre annually until such well is completed, and (c), the lessee agreed to commence a well within twelve months from date and to prosecute the work on same with reasonable dispatch to completion, the said well to be located at some point on the waters of Left Beaver Creek between the Osborn Branch and the William Martin Branch.

Thereafter, by mesne conveyances, these leases became the property of the appellant, Keystone Gas Company.

In April, 1919, appellees brought this action seeking a cancellation of those two leases, wherein they allege that notwithstanding the recital in the lease of the one dollar consideration and the nominal annual rentals to be paid in the event operations should not be commenced within six months, the real consideration moving them in the execution of these leases was the agreement by the lessee, or his assigns, to, within a reasonable time and with due diligence, enter upon the lands and test them for oil and gas without unreasonable delay to the end that the plaintiffs might secure the development of their said property and the financial benefits and enjoyments that might come therefrom. They aver that no well has ever been drilled or operations begun upon either of the two tracts of land named, although the plaintiffs had, on July 1, 1914, extended each of said leases until January 1, 1915, and had thereafter, at different times, extended them until April 1, 1916, for the purpose of encouraging and inducing the defendants to develop same; and that on August 1, 1917, they notified the defendant by letter to commence operations upon and develop said two tracts of land within a reasonable time, and again, on the 5th of February, 1918, by letter, notified the defendant to commence such development within a reasonable time, but no such operations had been begun or well drilled on either of said tracts.

The defendant, in its answer, asserts as one of the considerations for the execution of said leases the agreement therein by the lessee to commence a well within twelve months from the date of the leases, to be located at some point on the waters of Left Beaver Creek between the Osborn Branch and the William Martin Branch, and that such agreement was intended as a test well for the prescribed territory therein referred to, and was to be located and drilled at such a point within that territory as the lessee might prefer. It is admitted that no well has ever been drilled or begun on either of the two tracts of land in controversy and it is likewise conceded that the rentals thereon have been regularly paid up to the 1st of August, 1917, at which time the rentals were sent by appellant, but appellees refused to accept them and notified appellant, in substance, that they would not longer extend the lease, that they were chiefly interested

in the development of the property, and recited the fact that they had already extended the leases some three or four times and declined to further be bound by their terms.

The answer then proceeds to allege that in the year 1915, and while the lease was alive by reason of the renewal thereof, the lessee did drill on the Akers farm adjoining one of the leases in question, and on the waters of Left Beaver Creek between the Osborn Branch and the William Martin Branch, a well which showed a large flow of gas, and that the drilling of the same complied with and fulfilled the requirements of the two leases involved; and, although the lessee had thereby fully complied with its obligations in said leases, proceeded thereafter to and did drill two additional wells within the prescribed territory, both of which latter were dry, and that the three wells so drilled within the prescribed territory had cost about twelve thousand dollars.

By reply the plaintiffs denied that the provisions contained in the said leases relating to the commencement of a well within twelve months from the date thereof between the Osborn Branch and the William Martin Branch, was in any manner or way any part of the consideration moving the plaintiffs to execute said leases.

The trial court entered a judgment cancelling each of the leases and the gas company has appealed.

It has many times been held by this court in construing such leases that the real consideration moving the lessor to execute them is the expectation upon his part that the grantee will, within a reasonable time, proceed with development to the end that he, the lessor, may reap pecuniary benefit in the form of royalties if oil or gas should be produced from his property, and that such is the real consideration whether it be expressed in the instrument or necessarily implied from the facts.

Here we have a lessor who executed leases on the 1st of August, 1913, granting the lessee the sole right to produce oil and gas from his land, with an agreement by the lessee to commence operations and complete one well on the land within six months from date or in lieu thereof to pay certain nominal renewals. And yet four years thereafter, on the 1st of August, 1917, no well had been commenced on either of the two tracts and the plaintiffs then declined to accept further rentals and, in effect, demanded in writing the development of the property.

Notwithstanding this refusal and demand we find that in April, 1919, nearly two years after the demand, no such operation had been begun.

It has been held that under such circumstances it is the duty of the lessee, when such demand is made, to, within a reasonable time thereafter, begin the operation upon pain of forfeiture; and in the light of many former opinions of this court it would be a waste of time and energy to discuss the question whether the appellees were entitled to a cancellation, if there was no other feature in the case. Monarch Oil & Gas Co. v. Richardson, 124 Ky. 602; Dinsmoor v. Combs, 177 Ky. 740; Warren Oil & Gas Co. v. Gilliam, 182 Ky. 807; Hughes v. Parsons, 183 Ky. 584; Ohio Valley Oil & Gas Co. v. Irvine Development Co., 184 Ky. 517; Plumber v. Southern Oil Co., 185 Ky. 243.

But it is said that the drilling by the lessee of the three wells on Left Beaver Creek between the Osborn Branch and the William Martin Branch within the time prescribed in the renewals is such a development as was contemplated by the parties, and should, therefore, defeat the right to a cancellation of the leases, although there had been no development upon the lands directly involved. The argument is that the test wells drilled in the neighborhood constituted such development as the parties had in mind for the time being and was a sufficient compliance with the undertakings of the lessee until such time in the future as the lessee might see proper to drill upon the lands in question.

But an analysis of this contention will disclose its fallacy; as we have seen, the primary purpose of the lessor was the pecuniary benefit he might reap from the development of *his* property, if such development disclosed oil or gas thereon. He could hope for no pecuniary benefit by reason of the development of other lands in the neighborhood; he could get no royalties from them. His interest in the neighborhood development was only incidental, and was only to the extent it might indicate the probability of the discovery of oil or gas on his own property, but his direct interest and the substantial thing which induced him to execute the leases was the development of his own property and the resultant financial returns that might come therefrom.

The discovery of oil or gas on adjoining or nearby lands not only would not bring him any financial returns but, on the contrary, because of the known nature of oil

and gas, might operate to drain from his property such minerals.

But appellant relies upon Allen v. New Domain Oil & Gas Co., 24 R. 2169, as sustaining his position. In that case it appeared that in 1891 about five hundred land owners in Floyd county had executed oil and gas leases upon their respective lands to the same lessees wherein the lessees had undertaken to commence operations and complete one well on each leased tract within two years after finding oil in paying quantities in one of the test wells thereinafter named; and then in the lease, they undertook to drill and complete one or more test wells to be located within fifteen miles of Prestonburg. About four years thereafter Allen, against the will and consent of the lessee, began to take oil and gas leases on a portion of the same lands leased in 1891, and the assignee of the lessees in the original leases sought to enjoin him from such action. In that case there was no question of the right of a lessor to a cancellation for failure to develop within a reasonable time after notice, but the court enjoined Allen upon the ground that the lease contract was not void for lack of mutuality where the party who is not bound had performed the conditions thereof and expressly, in the opinion, said that it should have no effect on the lessors who were not parties thereto and who were asking no relief.

A question strikingly similar to the one here presented was passed upon in Elk Fork Oil & Gas Co. v. Jennings, 84 Fed. 839. In that case the lessees acquired leases from different parties in a given territory, all in substantially the same terms; they agreed to give the lessors a certain proportion of the oil obtained and pay a fixed sum for each gas well and undertook, on pain of forfeiture, to complete a test well within the prescribed territory in a certain time, and the court held that on the performance of the latter condition they did not become vested with an absolute right to the oil and gas privileges in the whole territory, but were bound within a reasonable time thereafter to explore for such minerals on each of the leases involved and a failure so to do operated as an abandonment of such leases.

To the same effect is Mansfield Gas Company v. Alexander, 97 Ark. 167.

But it is said that under the second section of the act of March 18, 1920, in this state, the leases in question were validated. That section is as follows:

"2. That all valid, existing or future contracts and leases for oil and gas rights upon and under the lands of this Commonwealth, wherein by their terms a rental clause is provided in event of failure to drill for oil or gas within a given period, are hereby validated and declared to be, and shall be, construed by the courts of this Commonwealth enforceable and binding contracts according to the terms thereof between the parties so long as the rentals therein provided shall be paid or tendered at and as provided by their terms during the period of said lease and contract."

In response to this appellees earnestly and ably argue that the section quoted in so far as it undertakes to validate pre-existing leases or contracts is in violation of the Federal Constitution prohibiting the passage of laws impairing the obligations of contracts.

But in our view it is unnecessary to pass upon this question; the appellees asserted their rights in the courts of this state before the passage of the act of March 18, 1920, and the judgment of the circuit court granting them the cancellation they sought was entered before that act became effective, and even if it had the effect to validate contracts and leases theretofore entered into, it could have had no purpose to affect in any way the adjudged rights of parties.

Judgment affirmed.