## Monarch Oil & Gas Company v. Hunt.

(Decided December 16, 1921.)

### Appeal from Allen Circuit Court.

1. **Mines and Minerals—Lease—Rentals.**—A lessee in an oil and gas lease requiring the payment of rentals until a well is commenced on the premises must prosecute the work of development with reasonable diligence if he wishes to avoid the payment of rentals and if he fails to do so the lessor may, after the lapse of reasonable time, have a cancellation of the lease.

2. **Mines and Minerals—Lease—Development.**—The drilling of a dry hole on a lease requiring development does not perpetuate the lease without further development or the payment of the rental stipulated in the contract.

3. **Mines and Minerals—Lease.**—A lessee, who after drilling a well or wells on a lease voluntarily removes his drilling machinery and other property from the lease, and makes no further effort to drill or develop the lease for more than a year will be held to have abandoned the lease.

DUFFIN, VANCE & DUFFIN and DENHARDT & HUNTSMAN for appellant.

FRANKLIN R. GOAD, HARPER & DENTON and BRADBURN & HARLIN for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON.—Affirming.

To the usual terms of a printed oil and gas lease appellee, Hunt, and the appellant, Monarch Oil and Gas Company, added the following paragraph:

"In case no well or prospect hole be commenced by said second party on said premises within three months of date thereon, all rights and obligations secured under this contract shall cease, unless the said second party shall elect to continue this lease in force from year to

year by paying an annual rental of $1.00 per acre for all said premises, or such portion thereof as may be designated by said second party, until a well is drilled on said premises. Said rentals shall be paid quarterly in advance by deposit to the credit of the first party in the First National Bank at Scottsville, Kentucky,'' and made a part of their contract.

No well was commenced on the lease within the three months given for that purpose, but the rental, $103.00, was regularly paid each quarter until October, 1918, when a well was commenced on the premises before the quarterly rentals were due in that month. Both that and a second well were completed before the end of the year, each containing a showing of oil. While tanks were erected on the premises no pumping apparatus or pipe line was connected with the wells or either of them. It does not satisfactorily appear that the wells were of sufficient oil producing capacity to pay to operate them.

Nothing more was done by the lessee company to develop the lease or produce oil or gas therefrom and the drilling machinery was removed to another lease where wells were drilled. After a year's delay on the part of the lessee company the lessor brought this action against the lessee charging that the company had abandoned the lease, had violated the terms of the lease contract and had failed to pay rentals due under said lease, and prayed an annulment of the lease as a cloud on his title. The appellant company defended upon the ground that it had expended large sums of money in an attempt to develop the lease and had developed it and had not abandoned it but was only waiting for an opportunity to market its oil. The pipe line was near at hand but not connected with that lease nor immediate production. It appears that the lessor at different times besought the lessee company and its agents to proceed with the development of the lease, and also asked for rentals until the lease was developed to the extent of paying royalties, but was refused both. He did not, however, give the lessee notice that he would not again receive rentals for an extension of the lease term and would require development of the leasehold. The only forfeiture clause in the lease provides that if no well is commenced on the premises within three months from date of the writing all rights and obligations then in force shall cease unless rentals were paid as there stipulated. While a well was not commenced the rentals were paid and accepted. Hence, there

could be no forfeiture of the lease on that ground.    Satterfield v. Galloway, 193 Ky. 26; Kies, et al. v. Williams, et al., 190 Ky. 596; Keystone Gas Co. v. Salisbury, et al., 192 Ky. 643.

We have, however, held that the mere sinking of a well without development and the payment of royalties will not operate as a complete satisfaction of all rentals and continue the lease in force indefinitely.    In the case of Suggs v. Williams, reported in 191 Ky. 189, we said:

"We have written that where a lease provides for the completion of a well within a specified time on pain of forfeiture, the drilling of a well into the oil bearing sands will be regarded as a completion of a well for the purpose of avoiding the forfeiture.    H. H. Kies v. A. Lee Williams, et al., 190 Ky. 596.    But as the lessors are entitled either to royalties from a producing well or to rentals in lieu thereof, it seems to us that the drilling of a dry well will not be regarded as a completed well, so as to relieve the lessee of the liability thereafter to pay rent. Here the lease does not provide that it shall be null and void on the lessee's failure to complete a well or pay rent, and though a failure in these respects may sometimes be considered as sufficient, if unexplained, to support the charge of abandonment, ordinarily no forfeiture will be declared in the absence of a forfeiture clause.    Thornton's 'The Law of Oil and Gas,' section 180; Ohio Valley Oil & Gas Co. v. Irvine Development Co., et al., 184 Ky. 517, 212 S. W. 110.    In this case the development of the property was not the sole consideration.    On the contrary, the lessees paid the lessors $1,000.00 in cash.    The lessees within one year drilled four wells into the oil-bearing sands.    Twenty-one days after the beginning of the second year they tendered the rental to the lessors. Even if the language of the lease be such as to imply a forfeiture none will be declared under the circumstances here presented."

Although two wells were drilled no oil was produced or royalties or rentals paid.    This was a violation of the spirit and terms of the lease contract, which contemplated the payment of rentals or royalties so long as the lessee continued to hold the premises.

An oil well from which no oil is produced is, as to the lessor waiting for royalties, as no well at all.    The lease is a cloud upon his title—a burden upon the estate.    Such a contract must be mutual and be supported by a sufficient consideration.    If after drilling a well in which

there is oil or gas the lessee goes away and leaves it for an unreasonable time without an effort to further develop the lease or market the oil, it will amount to an abandonment of the lease unless the lease is kept in force by the payment of rentals or in some other way, and a court of equity will relieve the lessor from the contract and cancel it. Soaper, et al. v. King, et al., 167 Ky. 121.

The facts of this case bring it within that rule. The lessee abandoned the lease and took away its machinery. It did nothing of consequence on the lease for more than one year after drilling in the wells before the commencement of this action. This was, under the facts of this case, an unreasonable time to delay the development of the lease. The oil company could have kept the lease contract in force by paying the stipulated rentals, unless the lessor had notified it to proceed with development. This he did not do. It could have proceeded with the production of oil from the wells and the payment of royalties and avoided an annulment of the lease, but the oil company did neither of these things and must be held to have abandoned the lease contract.

The chancellor having so held the judgment is affirmed.