## Johnson et al. v. Dodson.

(Decided December 21, 1928.)

F. R. GOAD and N. G. GOAD for appellants.

N. F. HARPER for appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Reversing.

In the brief filed on behalf of appellee, counsel thus states the facts:

"On the 4th day of October, 1919, R. H. Mitchell and wife executed an oil and gas lease on a tract of land in Allen County, Ky., to some of the appellants. It appears that later the lease was transferred by them to the Jackson Oil Company, which company became indebted to a man by the name of J. T. Lynch who brought a suit against the company and had this leasehold sold and the appellants who are all stockholders in the Jackson Oil Company purchased said leasehold and claimed to take over same as their individual property. This was prior to Sept. 21, 1923, and on that date the master commissioner executed to the appellants a deed of assignment for said property and for some little time thereafter they made some attempt to operate the lease, and the appellee operated the lease for a time under some sort of contract, but about October 17, 1925, he ceased to operate this lease and notified appellants that he could not afford to operate it any longer and demanded that they take charge and properly operate and develop the same. .

"Nothing, however, was done about it, but in the spring of the year after this time the appellee notified the appellants that something must be done; that operations must be resumed within a specified time.

"This letter was written to Johnson April 5, 1926. The appellee reminded him that he, appellee, had agreed to pay some on a new well if appellants would drill it. No answer was ever received to that letter and no attempt was ever made to operate the lease, and on August 10, 1926, this suit was filed seeking the cancellation of the lease contract alleging abandonment.

"Some time after this lease was executed the original lessor conveyed this land to the appellee. The

original lease contract was for a term of three years and as long thereafter as oil or gas or either of them should be produced.''

The statement of the facts made by counsel for appellee is substantially correct, but, going back further into the history of the case, we find that there had been considerable development, and that more than $19,000 had been spent in the development and equipment of the lease; that it had produced a considerable quantity of oil, although there is nothing in the record to show even approximately the total income which had been received from the sale of oil from the lease; that appellee himself as the employee of appellants was the pumper on the lease from January, 1924, until October, 1925; that, after the last date, he performed some services for appellants in having some of the machinery repaired as late as February, 1926, and that he looked after the payment of their taxes in 1926. We find that on October 8, 1925, appellee wrote Mr. Johnson, one of the appellants, in which he stated that he was going to quit pumping because he had been pumping for five months, and had received no money for it. He also said that he had decided to sell his place, and thought he would give Johnson the first chance to get it, if he wanted to buy it. On the same date there is a letter in the record showing that Mr. Johnson wrote a letter to appellee stating that he had just received check and invoice for the oil runs, and inclosing a check to appellee for one-third of the amount. He expressed regrets at the delay, and explained that it grew out of the making of some new contract. We do not find the letter written by appellee about October 17th referred to in the statement of counsel, but there is a letter in the record written by Johnson to appellee of October 30, 1925, apparently in response to the letter written by appellee on October 8th. In this letter appellee advised that his letter in regard to his quitting had been received. Appellee appears to have suggested that he would no longer pump for one-third of the oil, but he would pump for $25 a month. He was advised that such a contract would not suit appellants. With this letter was inclosed a check for $15.11, appellee's part of the oil runs of October 14, 1925. It appears that appellee later wrote appellants, in which he advised them that his time was about up under his notice, and that he expected to quit. No other communica-

tion passed between them until in February there was some correspondence about the taxes and a broken piece of machinery. We do not find anything in the record prior to the letter written by appellee in April, 1926, which would indicate that appellee was making any particular insistence that the wells be pumped. In fact, he appears to have said nothing about the pumping of the wells during the winter of 1926. The letter of April 8, 1926, advises appellants that the lease had been shut down for almost five months, and it suggested that they were saying nothing about pumping or drilling. He then advised that he had too much tied up in the lease to allow it to become worthless, and reminded them that he had offered to pay a part of a new well, but had no opportunity of doing so. He then concluded:

"If you people are not going to do anything more all I ask of you in a kind business way is to give up the lease so I can have something done with it, to make it pay something. Only a business matter with me and you can't blame me so I would like to see something doing inside of sixty days. Please advise me what you aim to do so I will no how to arrange my business."

He had no reply to this letter, but there is nothing in it to warn appellants that he is expecting to ask for a forfeiture of the lease for a failure to develop, although there may be an intimation to that effect.

Mr. Johnson, one of the appellants, testified that he received a letter from appellee on November 17th. That letter is in the record, and shows that appellee stated that the 30 days would be out on the 20th of November, and that he was going to quit pumping, although he would like to pump, but could not afford to do so and pay expenses. Johnson stated that, after receiving the letter, he supposed that appellee was engaged in pumping the property, as he had threatened to quit several times and had not done so. He had no reason to assume that appellee would continue after this positive notice that he had quit. Appellants claim that the price of oil was very low, and offer that as a reason why they had not given closer attention to the development of the property. They offer as another reason why they thought Johnson was still pumping the property that they had a letter from him on February 15, 1926, in which he reported that it was neces-

sary to have a crank shaft fixed, and that they advised him to do so, and they paid for the fixing of it. It was not unusual, so they state, for the oil to be retained in the tanks at the wells for some time before it was turned into the pipe lines. There is nothing in the record of a convincing nature tending to show that appellee was making any complaint about the pumping of the wells through the winter of 1926. The appellants still insist that it is their purpose to further develop the lease, and that they never had any intention of abandoning it.

The appellee insists that under the[*] authority of Monarch Oil & Gas Co. v. Hunt, 193 Ky. 315, 235 S. W. 772; Enfield v. Woods, 198 Ky. 328, 248 S. W. 842; Patton v. Woodrow, 198 Ky. 85, 248 S. W. 226, the lease here involved was subject to forfeiture.

The Monarch Oil & Gas Co., supra, was a case where a dry hole was drilled on the lease, and thereafter the lessee did nothing to develop the lease, and the court held that, upon proper notice, it must develop the lease or pay rentals, or, if it had abandoned the lease and failed to drill further on the lease for a period of more than one year, the contract was subject to forfeiture. That case is not in point, as the lessee failed to perform the very conditions of the contract which were necessary to keep the lease alive and was making no effort to do so.

The case of Enfield v. Woods, supra, was a case where no oil was produced, and, as the lease was only to remain in force as long as oil was produced and the development had not resulted in the production of oil, and no further efforts had been made to develop it, it was held that it was subject to forfeiture.

The case of Patton v. Woodrow, supra, is not in point, because in that case the lessee had abandoned the lease, leaving certain equipment thereon, and later instituted suit to recover damages to the equipment while it remained on the lease. In that case it was held that, upon the expiration of a lease, or when it was abandoned by the lessee, the equipment left on the lease became the property of the lessor, unless it was removed within a reasonable time which was a question for the jury. Neither of the cases seems to fit the facts in the case before us.

We think that this case falls within the rules announced in Dinsmoor v. Combs, 177 Ky. 740, 198 S. W. 58. In that case, it was substantially held that, when oil

and gas is found on leased premises in paying quantities, the lessee is bound to diligently work and operate it in order to bring the product to market, and thus yield to the lessor his royalty, and that, unless the lessor does actually develop the leased land, and in good faith diligently operate under the lease, it will be deemed to have been abandoned, and will be canceled. That being true, the question before us is one of whether appellants in good faith developed this lease, and whether, in the exercise of a reasonable judgment, they have pursued the development to the extent that a reasonably prudent man engaged in the same business would have done. It was held in the case last cited that, where as much development had been done as was necessary to produce as much oil as could reasonably be produced from the land, a cancellation would not be adjudged. There is nothing in this record to show that there had been a failure on the part of appellants to reasonably develop the lease. It is true that appellee had insisted that certain offset wells should be drilled, but the testimony seems to support appellants in their contention that such wells were not required or necessary. In the case just cited it was necessary for the lessor to demand additional development, and we do not find enough in this record to show that appellee ever made any positive demands for additional development. He suggested his dissatisfaction and his desire to have additional work done, but, even in his notice of April 8th, he only mildly suggested that, if appellants were not going to do anything further, he would like for them to surrender the lease to him. He further said that he expected something to be done within 60 days, and requested appellants to advise him what they expected to do. Forfeiture for nondevelopment, or delay in development, or for a failure to reasonably develop, is highly essential in the business of producing oil, but the law does not favor forfeitures, and none should be allowed without the one claiming the right shall have first placed the other party on notice that a forfeiture will be demanded, unless the terms of the lease as to development are carried out.

The case of Hughes et al. v. Busseyville Oil & Gas Co., 180 Ky. 545, 203 S. W. 515, also supports the views herein expressed. This view is also supported by Thornton on Oil and Gas (3d Ed.), sec. 217, page 348.

138

It is insisted by counsel for appellants that appellee is estopped by reason of his having pumped this lease for appellants, and because of his having performed work for them after he gave them a final notice that he was going to quit on the 20th of November. This plea might be effective, if appellee was relying solely upon the ground that appellants failed to properly operate the lease during the winter of 1926, but there is nothing in the nature of estoppel after he wrote his letter of April 8, 1926.

If appellants abandoned the leased premises, and did not within a reasonable time remove their equipment therefrom, the appellee is within his rights in insisting on a forfeiture after having placed them on notice that he would do so. The appellants, if the lease is not producing oil in paying quantities, have the right to give notice that they will abandon it, and they may then within a reasonable time thereafter remove such equipment as they are authorized to remove under the terms of the contract. Appellee may give notice that he will insist upon a forfeiture, unless there is further development and diligent operation, and, if he can show that there has been a lack of sufficient development, or a sufficient failure of operation, he will be entitled to a forfeiture. Under the record as presented, we cannot hold that he made the necessary demand for additional development or continued operation. For that reason, and because there is not sufficient evidence to show that appellants had abandoned the lease, the judgment must be reversed.

Judgment reversed, and cause remanded for proceedings consistent with this opinion.