# Leeper Oil Company v. Rowland et al.

(Decided May 26, 1931.)

CARY, MILLER & KIRK for appellant.

T. F. BIRKHEAD for appellees.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

This appeal presents to us for review the action of the trial court determining, on the pleadings and proven facts, the rights of the appellants and appellees predicated upon an oil lease. On the 8th day of August, 1919, the lease was executed and delivered by appellees G. F. Rowland and Nellie Rowland to C. C. McAdams, of

Hawesville, on 88 2-75 acres of land, situated in Hancock County, Ky.,

> "For the purpose of entering upon, drilling for and removing therefrom oil and gas for a term of five years from date, and as much longer thereafter as oil and gas is found, with the right to use oil, gas or water therefrom, and all rights and privileges necessary or convenient for such operation."

The lessee entered on the land and drilled one well about the year 1923. The appellants acquired the ownership of the lease about the year 1923. They drilled three wells, all producing, which made four producing wells. Well No. 1 produced about 39 barrels per day when it was first brought in. The others were not so strong. The four made for the first, second, and third years after they were drilled about 240 barrels per month. The average depth of the wells was from 750 to 775 feet. The oil was found in what is known as "Barlow Sand," a hard, long-life, slow-yielding sand. The appellant, the Leeper Oil Company, for itself and those interested with it in the lease, did the operation on appellees' lease and the adjoining leases. The Jett lease is on the north, the Thompson lease on the west, the Brown lease on the northwest, and the Baize lease on the southwest of the appellees' land. A central pumping plant or power house is owned by the appellant, Leeper Oil Company, and is located on one of the leases adjoining appellees' land, with which their and the adjoining leases are pumped. A pipe line is attached to the Rowland tanks, and goes through the Barlow farm, south to the Illinois Pipe Line station and Hayes station. The Illinois Pipe Line Company carries the oil to market. The wells on appellees' land have been pumped every day since the appellant, Leeper Oil Company, began to operate under the lease. The full capacity of the wells has been taken out. The oil is marketed as fast as the tanks are filled. The price of oil between 1923 and 1930 ranged from $3 a barrel to $1.23. On March 1, 1930, it was $1.50. During the six months next preceding March 1, 1930, the market price of oil declined from $1.83 to $1.68, and later to $1.50. The cost per month of the pumping power and its operation was $100, which when apportioned among the farms on which the leases are operated, amounts to about $15 or $20 per month for pumping the wells on the land of appellees. The daily average of production of

the wells on the lands of appellees in October, November, and December of 1929, according to the returns from the pipe line, was 1 1/3 barrels per day for the four wells. The producing wells on the adjoining land are in capacity about same as appellees'. The average cost per well completed and under pump is from $3,600 to $3,800. The appellees have received from the Leeper Oil Company, as one-eighth royalty from the operation under the lease on their land, $2,446. On December 1, 1928, the appellees filed this action for the purpose of requiring the appellants "to go forward with reasonable diligence to develop all of their tract of land for oil and gas, and if it cannot be done that the lease be cancelled." The appellants by answer traversed the petition, and, as an affirmative defense, definitely set forth their manner of operation of appellees' lease and the production and sale of the oil from the leased premises. They aver that the lease had been already drilled and developed as much as conditions of the market and cost of drilling and operation, justified, and that under the existing and prevailing conditions in the oil business it will be imprudent and with sacrifice and loss to the parties concerned to develop further at the present time. The answer and amended answers were taken as controverted of record. On submission, the trial court, by its judgment, directed and required the appellants, before the 1st day of October, 1930, to go on the land of appellees and drill another well at such place as they may select, and, if it be a producing well, to connect it with the tanks and pipe line and pump it with reasonable diligence and to continue to develop the land, drilling as many as three wells per year until its development was completed, or in their discretion cancel the lease, except as to five acres around each of the oil wells in operation. The appellants were required by the judgment to report at the November, 1930, term to the court what progress they had made under its judgment.

It is conceded that the lease contains no forfeiture clause. Its only provisions touching the subject of development are clauses 1 and 2, in this language:

"First: Lessee agrees to drill a well upon said premises within one year from this date, or thereafter pay to lessors rentals as hereinafter provided until a well is completed or the property hereby granted is reconveyed to lessors.

"Second: Should oil be found in paying quantities the lessee agrees to deliver to the lessors free of charge into tanks or pipe one-eighth part or share of all crude oil produced or saved from said premises."

It is the contention of appellees that, although there is no forfeiture clause or provision in the lease authorizing its cancellation, there is an implied covenant from its terms authorizing its cancellation for failure of appellants to develop or to continue to develop for oil until the land is completely developed, and that, when their rights are measured by the facts, they are entitled to its cancellation or to that granted by the trial court.

On the threshold of a consideration of the case we are confronted with the question whether the appellees have met the requirement or duty to give notice to the appellants of their ultima demand to go forward with the development before their right of action occurred because of their failure, if any, diligently and reasonably to develop the leased premises as required by the usual implied covenant which the courts generally regard as a part of the terms of every lease for oil and gas, and which they enforce when the proven facts warrant such action.

In regard to the giving of the necessary notice, they allege in their petition that "they have repeatedly called upon defendant to go forward and develop said tract of land for oil thereunder and to comply with its contract; that on the 31st day of October, 1925, they gave to defendant written notice, requesting it to go forward with the development of said lease for oil, by drilling wells," A copy of said notice is filed herewith as a part hereof, marked "B." The notice alluded to as Exhibit B is in these words:

"Oct. 31, 1925.

"Notice is here given to Leeper Oil Company that I demand an off-set oil or gas well to be drilled off-setting well No. 4 on the farm of E. H. Barlow in Hancock County, Ky.

"[Signed] G. F. Rowland."

Bearing on the question of giving of notice, we find these questions and answers in the deposition of G. F. Rowland.

"Q. What effort, if any have you made to get them, Leeper Oil Company, to go forward and

develop this remaining part of your farm? A. I notified them once through D. J. Morrison, Notary Public, Pellville and I have talked with him myself and I have had you, T. F. Birkhead to notify him over one year ago.

"Q. Can you give the date of the written notice that you had served on Mr. Leeper, or the Leeper Oil Company, notifying them to go forward with the development of this land? A. The notice is filed with the petition and is dated the 31st day of October, 1926.

"Q. In your interview with Mr. Leeper, representing the Leeper Oil Company, what was said about going forward and developing this land for oil and gas? A. I just asked him to go forward and drill and drill the off-sets and develop the lease. When they produced oil I expected it to be developed, I told him that was what I expected."

The written notice given by the appellees to the appellants demands the drilling of an offset well. The contents of the notice alleged to have been given for them by D. J. Morrison and T. F. Kirkhead cannot be surmised from the witnesses' statements in regard to it. His statements as to what he himself requested Leeper to do in regard to developing the lease clearly relate to the same offset well and its development, which is referred to in the written notice. That is the subject he states he was discussing with Leeper. His statements relating thereto are ambiguous and equivocal. The giving of a notice, plain and unequivocal in its meaning and puspose, of an unconditional demand to go forward and develop, is a prerequisite and a condition precedent to the accrual of a cause of action to the enforcement of the right to cancel or forfeit an oil lease under the doctrine of implied covenant. The doctrine was evolved by the courts, when no forfeiture or cancellation was provided for in the lease, to effectuate the intention of the parties that would do justice to the lessor as well as the lessee. It is fundamentally predicated on the basis that the lessor must, not only refuse rentals, but unequivocally demand development, and then wait a reasonable period for that purpose. It is harsh in its operation and should be cautiously and equitably enforced, and its requirement of giving of notice of a demand to operate before the accrual of a cause of action for failure to develop should be strictly construed and rigidly enforced. While

notice is not required to be in any particular form or even written, it must be a sufficient ultimatum to put the lessee on his guard and advise him of the consequences of his failure to operate. Great Western Petroleum Corp. v. Samson, 192 Ky. 814, 234 S. W. 727; Lowe v. Broad Bottom M. Co., 194 Ky. 88, 238 S. W. 192; Johnson v. Dodson, 227 Ky. 132, 12 S. W. (2d) 310. The facts show that appellants were justified in not drilling an offset well. Johnson v. Dodson, supra. The lease antedates the enactment of section 3766b-4c, Ky. Statutes. It cannot retroactively affect appellees or give them any rights thereunder. Union Gas & Oil Co. v. Diles, 200 Ky. 188, 254 S. W. 205; Oil Fork Development Co. v. Huddleston, 202 Ky. 261, 259 S. W. 334. We have never approved a cancellation or forfeiture where notice unequivocal in its meaning and purpose was not given before the institution of an action for that purpose. The showing in this case as to the giving of notice of this character is not sufficient to bring the case within the rule we have steadfastly applied in such cases. Dinsmoor v. Combs, 177 Ky. 740, 198 S. W. 58; Bell v. Kilburn, 192 Ky. 809, 234 S. W. 730; Warren Oil & Gas Co. v. Gilliam, 182 Ky. 807, 207 S. W. 698; Keystone Gas Co. v. Salisbury, 192 Ky. 643, 234 S. W. 290; Union Gas & Oil Co. v. Indian-Tex. Pet. Co., 199 Ky. 384, 251 S. W. 1008; Niles v. Meade, 189 Ky. 249, 224 S. W. 854; United Fuel Gas Co. v. Adams, 198 Ky. 284, 248 S. W. 841; Johnson v. Dodson, supra.

If the notice and the testimony in regard to it should be construed to be sufficient, in substance, to meet the requirements in such cases, we are not convinced from the evidence that the appellees are entitled to the harsh relief granted by the trial court. It may be regarded as the law in this state that, in the absence of an express provision of the lease authorizing its forfeiture for nondevelopment when oil or gas is found on the leased premises in paying quantities, the lessee is bound under the doctrine of implied covenant, diligently and in good faith, so to develop the leased premises as to yield to the lessor his royalty, and after an ultimate demand, either oral or written, is made of him by the lessor, if he fails or refuses to do so, within a reasonable time thereafter, without a reason, valid when measured by the established principles of equity, it will be deemed abandoned and will be canceled, and the courts will so declare it. Dinsmoor v. Combs, 177 Ky. 740, 198 S. W. 58; Johnson v. Dodson, supra; Soaper v. King, 167 Ky. 121, 180 S. W.

46; Monarch Oil Co. v. Richardson 124 Ky. 602, 99 S. W. 668, 30 Ky. Law Rep. 824.

The evidence in this regard conclusively establishes that appellants have not acted in bad faith and have not been guilty of culpable negligence in the development of the leased premises. The appellants own the leases adjoining appellees' land and are well equipped and qualified to operate all the leases. The appellees are getting the benefit of the reduced cost of operation of their lease by its operation in conjunction with appellants' power plant and equipment on adjoining leases. Included in this is the use of gas, from the adjoining premises in pumping the wells on appellees' land. A cancellation of their lease will deprive them of this valuable assistance in operating their lease.

The appellee G. F. Rowland states his reason for desiring immediate development or the surrender of the lease in this language: ''I just feel like if they will go ahead and develop it will pay me more money than it is paying, and if Mr. Leeper don't feel like it is worth developing he should surrender it so I could have a chance to lease it to someone else. I am satisfied I could do that. Missed several chances that I could have leased it.''

It is suggested in argument by brief that, when oil was selling at $3 a barrel, the appellants failed to further develop the lease, and that, since the price of oil has declined, they have failed to develop it. It is equally as true that, when oil was selling at $3 a barrel, the appellees appear to have been satisfied, and do not claim to have given any notice during that period that the development, as it was being done, was not satisfactory to them.

It is shown by the evidence without contradiction that, when oil was selling at $3 a barrel, it began to decline, and that it has continued to do so, and it is common knowledge that at this time it is selling much below the price per barrel it was selling at the time of the trial of this action. That there is a nation-wide depression existing and prevailing, which is neither a psychological idealism nor an incongruous fancy, but a regrettable reality, manifesting itself in every vocation and business by its presence in every community, is common knowledge, not only to the layman, but to the courts. The oil industry, through unbridled competition, has so far overproduced itself, that thousands of those engaged in the business are faced with ruin by low prices. It has

employed all of its own agencies and has sought government agencies to save itself from impending devastation, and to build or to find a market for its products. The appellants rely upon such facts as their chief defense, and it is our conclusion that, without regard to common knowledge of existing conditions prevailing in every line of business, the proven facts fully sustain it.

"The evidence does not disclose the existence of a situation here that would induce any reasonably prudent man to make further development at this time, and the evidence does not show enough to sustain the cancellation of this lease," or the judgment of the court herein. Swiss Oil Corporation v. Risner, 223 Ky. 397, 3 S. W. (2d) 777, 778; Raines v. Ky. Oil Co., 200 Ky. 480, 255 S. W. 121; Hughes v. Busseyville Oil Co., 180 Ky. 545, 203 S. W. 515; Johnson v. Dodson, supra; Austin v. Ohio Fuel Oil Co., 218 Ky. 310, 291 S. W. 386.

It is a rule of this court to give great weight to the judgment of the chancellor, and, with this rule in mind, we are convinced that the judgment is not sustained by the preponderance of the evidence.

Wherefore the judgment is reversed, and cause remanded for proceedings consistent with this opinion.